[Opinion delivered June 27, 1884.]

CITY OF GALVESTON V. G. POSNAINSKY.

(Case No. 5445.)

1. LIABILITY OF MUNICIPAL CORPORATION CREATED BY SPECIAL ACT FOR DAMAGES.— The city of Galveston, a municipal corporation created by act of the legislature, was by charter invested with exclusive control over its streets and alleys, public grounds and highways in the city, and with power to widen, regulate, clean or improve the same, to put drains and sewers therein, and to prevent the incumbering thereof; to establish, erect, construct, regulate and keep in repair sidewalks, culverts and sewers; to compel persons to keep filth, rubbish, etc., from the sidewalks and streets and gutters, in front of premises occupied by them, and also other powers set forth in the opinion. A permanent physical injury resulted to a child, nine years old, who fell into an uncovered ditch in the city, from two to three feet deep,

which for a long time had been left open by the city, along a defective side-walk and without barrier or protection. In the ditch rubbish and piles of glass had been suffered to accumulate. In a suit for damages brought for the child, *held:*

(1) The liability of the city could not result from any express statute.

(2) No recovery could be had on such a cause of action had it been brought for injury resulting from neglect of the public officers of a subdivision of the state, even if given a *quasi* corporate existence, if created solely for a public purpose by a general law, applicable to all such subdivisions.

(3) This rule grows out of the principle that a state cannot be made liable to an action for neglect or misfeasance of its officers, through which a person is injured, unless some statute creates the liability. Citing Bigelow *v.* Inhabitants of Randolph, 14 Gray, 543; Eastman *v.* Meredith, 36 N. H., 295, and other cases.

(4) The tendency of decisions is, however, to change the rule to a limited degree, so as to make even *quasi* corporations liable.

(5) The rule exempting *quasi* corporations from liability on such a cause of action has no application to towns and cities incorporated under special laws.

(6) The reason for the distinction is, that *quasi* corporations are but agencies of the state for the general convenience and benefit of all, while municipal corporations created by special charter are supposed to be created chiefly for the benefit of the inhabitants of the city.

(7) The essential difference between municipal involuntary corporations, such as counties, created by general law, and incorporated cities, considered.

(8) Whenever any municipal corporation is created, and is restricted to the exercise of powers pertaining to the administration of general laws and the policy of a state, they are agencies of the state, and not liable to be sued for the exercise of such powers, when the right to sue is not given by statute.

(9) Persons or corporations voluntarily assuming to perform a work, even though it be *quasi* public in its character, must be held responsible for due care in its performance. When a city accepts a charter conferring defined powers, the resulting duty is imposed thereby to faithfully exercise them, and, failing in this, it is responsible to one injured thereby.

(10) CASES CITED.— City of Chicago *v.* Robbins, 2 Black, 418; Mayor *v.* Sheffield, 4 Wall., 189; Evanston *v.* Gunn, 99 U. S., 660; Barnes *v.* District of Columbia, 91 U. S., 551, cited.

(11) A city existing under a special charter from the legislature is responsible in damages for the wrongful and negligent performance of acts done under its charter powers in the management of property or rights voluntarily held for its own immediate profit or advantage as a corporation, although inuring incidentally to the benefit of the public at large.

(12) CASES CITED AND APPROVED.— Duke *v.* Mayor of Rome, 20 Ga., 635; Brinkmeyer *v.* City of Evansville, 29 Ind., 187; City of Richmond *v.* Long, 17 Gratt., 375; Prather *v.* City of Lexington, 13 B. Mon., 559; Western College *v.* City of Cleveland, 12 Ohio St., 375; Detroit *v.* Blackeby, 21 Mich., 84, and City of Navasota *v.* Pearce, 46 Tex., 527, noticed and reviewed. Peck *v.* City of Austin, 22 Tex., 265, and Keller *v.* Corpus Christi, 50 Tex., 628, cited and approved.

(13) At common law a city corporation created by special charter is liable for an injury resulting from a neglect to keep its streets in repair, and it is not necessary that the right to sue therefor should be given by statute.

2. DAMAGES.— In this case, as above stated, if there were pieces of glass or other sharp and dangerous substances in the ditch, without which the injury, notwithstanding the fall of the child, would not have occurred, even then, though such substances would not have injured without the fall, yet if the fall was caused by the defective condition of the sidewalk, then it must be deemed the proximate cause of the injury.

3. SAME.— If the injury resulted from one of the causes, or from the two combined, if such cause would not have existed but for the neglect of the city, it would be liable if there was no failure on the part of the plaintiff to exercise due care.

4. DAMAGES.— A verdict was rendered against a city for $10,000 damages, caused by its negligence in failing to keep its streets in repair, whereby the leg of a child nine years old was injured and the child rendered lame for life. _Held_, that though the verdict was for a large amount, the judgment would be permitted to stand, the supreme court expressing an unwillingness to substitute their judgment for that of the jury in the absence of facts showing undue influence.

APPEAL from Galveston. Tried below before the Hon. A. P. McCormick.

Suit brought November term, 1873, of the district court of Galveston county, by Nannie Posnainsky, a minor, who sued by her father and next friend, G. Posnainsky, against the city of Galveston for damages caused by her falling into a neglected drain, bordering one of the sidewalks of the city, originally constructed by the city, but out of repair, uncovered and unguarded, by which she was rendered a cripple for life. Charged that the accident occurred through the negligence of the city.

The defendant, besides the general denial, answered specially that the injury, if any, was sustained and occasioned by the "carelessness, want of attention and reckless disregard of all prudence" on the part of the plaintiff. That the sidewalk was sixteen feet wide, entirely unincumbered and free, open and smooth throughout its entire width and length; that the street in front and adjoining the sidewalk, was also unincumbered, open and smooth for its entire length, for all travelers and passers; that between the sidewalk and street is a gutter or drain which the defendant, in discharging the _duties_ imposed on her by the charter of the city, constructed and _maintained_ for the purpose of draining the location. "That the said gutter was left open and uncovered by the authority of the city, intentionally and designedly," so as better to preserve the health of the city. That the gutter was of such size and width as to be easily seen by all passers, and was seen and known to exist by plaintiff; that it was near the house of plaintiff; that at the time of the accident it was broad daylight; that the injury was not caused by the

fall, but by a cut from a glass bottle; that the crippled condition was caused by the want of proper surgical aid; and upon these issues the parties went to trial, and a verdict and judgment rendered against the defendant for $10,000.

A brief filed by Hon. A. H. Willie in 1876, and before his election to the position of chief justice, cited for appellant the following cases to show that in New England states neither towns nor cities are under implied liability for injuries resulting from defective sidewalks or streets:  Oliver v. Worcester, 102 Mass., 488, 489; Chidsey v. Canton, 17 Conn., 478; Reed v. Belfast, 20 Maine, 245, 248; Baxter v. Turnpike Co., 22 Vt., 114; Providence v. Clapp, 17 How., 167; Mower v. Leicester, 9 Mass., 247.

He cited, also: Russell v. Men of Devon, 2 Term R., 667; Mayor of Lynn v. Turner, Cowp., 86; Henley v. Mayor of Lyme, 5 Bing., 91; Gibson v. Mayor of Preston, 5 Q. B., L. R., 218, 222; Lane v. Colton, 1 Ld. Raym., 646; Whitfield v. La Despencer, 2 Cowp., 754; Freeholders v. Strader, 3 Harr. (N. J. L.), 108; Cooley v. Freeholders of Essex, 3 Dutch., 415; Livermore v. Board of Freeholders, 29 N. J., 245; Pray v. Mayor, 32 id., 394; Brinkmeyer v. Evansville, 29 Ind., 187; Duke v. Mayor, 20 Ga., 635; Richmond v. Long, 17 Gratt., 375; Prather v. Lexington, 13 B. Mon., 559; Western College v. Cleveland, 12 Ohio St., 375; 12 La. Ann., 481; Daagan v. Mayor of Mobile, 31 Ala., 469; Detroit v. Blackeby, 21 Mich., 84.

*Jas. B. Stubbs*, also for the appellant, filed an able argument for a rehearing.

*Waul & Walker*, with *Kilpatrick*, for appellee, cited, on the right to sue the city for the injury: Weightman v. Washington, 1 Black, 39; Nebraska City v. Campbell, 2 id., 590; Chicago City v. Robbins, 2 id., 418; Mayor v. Sheffield, 4 Wall., 184, 194; Barnes v. District of Columbia, 1 Otto, 541, 551; Evanston v. Gunn, 9 id., 600; 14 Gray, 541; Meares v. Commissioners of Wilmington, 9 Ired., 80; Albrittin v. Mayor of Huntsville, 60 Ala., 486; S. C., 31 Am. R., 46; O'Neil v. City of New Orleans, 30 La., 220; S. C., 31 Am. R., 221; Dewey v. Detroit, 15 Mich., 309; Smoot v. Mayor, 33 Ala., 69; Dayton v. Pease, 4 Ohio St., 80; Erie v. Schwingle, 22 Pa. St., 384; Sterling v. Thomas, 60 Ill., 264; Blake v. St. Louis, 40 Mo., 569; Rowe v. Portsmouth, 56 N. H., 291; Eastman v. Meredith, 36 N. H., 280; Parker v. Lowell, 11 Gray, 353; Vason v. Augusta, 38 Ga., 542; State v. Newark, 4 Dutch. (28 N. J. L.), 491; Memphis v. Lasser, 9 Humph., 757; Rochester W. L. Co. v. Rochester, 3 N. Y.,

463; Weet v. Brockport, 16 N. Y., 161, n; Mayor v. Furze, 3 Hill, 312; and other authorities cited in the opinion.

STAYTON, ASSOCIATE JUSTICE.— It is urged that the court erred in giving the first and fourth instructions.    These instructions were as follows:

1.  "The defendant has entire control of streets within the corporate limits, and has power to provide for and enforce the manner in which said streets are to be kept, and is liable to travelers on said streets for any damage received, without the fault of the one injured, from the placing in the street such obstructions as render the travel upon said street hazardous to the persons or the property being conveyed, or passing said streets."

4.  "If the drain was a reasonably proper one in its manner of construction, and the leaving it uncovered and unfenced between the crossings of the streets and alleys was not reasonably liable to result in injury to persons passing and using ordinary care, to be expected from those who usually travel streets in the city, the defendant would not be liable, and you should return your verdict for the defendant."

It is also urged that the court erred in the charge generally; and so much of the charge as bears on the question raised by the instructions above set out is as follows:

2.  "The opening and repairing of streets is a matter of discretion in the city government; but when she undertakes to open or construct streets and travel ways, she must so construct them as to render their use reasonably safe to such persons as are naturally expected to use said ways, using such care as such persons ordinarily exercise."

3.  "It is the duty of the defendant to provide for the health of the inhabitants of the city by the construction of all necessary and proper drains.

"It is a question for the jury to determine from the proof whether the drain on Seventeenth street, covered at the crossings of the streets and alleys, but left uncovered in the intervening spaces and without any barrier to prevent travelers falling in the same, was such a construction as that the persons using said street could with ordinary care avoid receiving injury therefrom."

7.  "If you find the drain was a dangerous obstruction in the street, and was not properly guarded, and that the plaintiff, using due and ordinary care in passing, slipped and fell into said drain, and that the injury she received resulted solely from said fall, and

not in part from the presence of some accidental cause unknown to the defendant, you will find for the plaintiff, and assess the damage at such sum as in your judgment of the proof will compensate her for the pecuniary loss the plaintiff has sustained in the damage done to her person by said fall and injury."

The second instruction asked by the defendant and refused by the court, in effect declared that the performance of certain acts by the city would be the exercise of due care. This charge was subject to objection on this account, and the question of due care on the part of the defendant was fairly presented to the jury, by the charges before referred to, in connection with the following charge which was given by the court:

5. "If the proof should satisfy you that the drain was one dangerous to persons passing and using ordinary care, but should satisfy you also that the injury in question resulted from the want of ordinary care on behalf of the plaintiff, the plaintiff cannot recover for the injury thus received through the plaintiff's want of ordinary care. In considering the question, the use of care on the part of the plaintiff, you will have regard to the age of the plaintiff, and not exact the same degree of care on the part of a child of nine or ten years as would be exacted of and exercised by a person of mature years and discretion."

The second instruction asked by the defendant, as well as the third, which was also refused, assumed that the city was liable if the injury resulted from the want of due care by it, without negligence on the part of the injured person.

As well stated by counsel for the appellant, "the gist of the action is the negligence of a municipal corporation in failing to keep its streets in repair, whereby damage resulted to a private person. And right at the threshold we are confronted with the important question: Is a municipal corporation liable, civilly, for such negligence?" This question is fairly raised by the assignments of error, based on the charges given; it may, however, be doubted, looking to the charges asked by the defendant and refused, whether this question was directly raised in the court below during the trial.

The city of Galveston is a municipal corporation, incorporated by an act of the legislature of this state; and in addition to the powers of taxation, and other like powers usually conferred on such corporations, its charter provides that it shall have powers thus stated in its charter:

"TITLE 12 — ART. 4.

"Section 7. To have the exclusive control and power over the streets, alleys and public grounds and highways of the city, and to

abate and remove encroachments or obstructions thereon, to open, alter, widen, extend, establish, regulate, grade, clean, or otherwise improve the same; to put drains and sewers therein, and to prevent the incumbering thereof in any manner, and to protect the same from any encroachment or injury, and to regulate and alter the grade of premises, and to require the filling up and raising of the same.

"Section 8.  To establish, erect, construct, regulate and keep in repair bridges, culverts and sewers, sidewalks and crossings, and to regulate the construction and use of the same, and to abate and punish any obstructions or encroachments thereon; and the cost of the construction of sidewalks shall be defrayed by the owners of the lot or part of lot or block, fronting on the sidewalk; and the cost of any sidewalk constructed by the city shall be collected, if necessary, by the sale of the lot or part of lot or block on which it fronts, together with the costs of collection, in such manner as the city council may by ordinance provide."  .  .  .   Sp. Laws 1871, page 355.

"Section 14.  To prevent the incumbering of the streets, alleys, sidewalks and public grounds with  .  .  .  boxes, lumber, timber, firewood, posts, awnings, signs, or any other substance or material whatever, or in any other manner whatever; to compel all persons to keep all weeds, filth and any kind of rubbish from the sidewalks and streets and gutters in front of the premises occupied by them."  .  .  .   Sp. Laws 1871, page 357.

The near approach of the close of the term makes it necessary that we content ourselves with a statement of what we understand to be the law on the question raised, as settled by the great weight of authority, and upon principle, in regard to the liability of a municipal corporation created by a special law, granting such powers as are given to the city of Galveston by its charter, and giving such means as are therein given to execute the powers, for damages to an individual, resulting from an injury received through the neglect of such a municipal corporation to keep in repair its streets, other public ways, sewers and like public works over which it is given full control by its charter.

In this state such corporations are not made liable for injuries resulting from neglect, by any express statute; and if liable, they are so solely on the ground that the proper application of the principles of the common law makes them so liable.  To determine what the common law rule upon this subject is, we will refer to the great body of the common law decisions on this question, which, for the reasons given, we cannot, to any considerable extent, review, but

will to some extent cite; feeling that a conclusion thus reached will more likely be correct than the conclusion of a single court, based upon such course of reasoning as it might pursue.

It has been often held that no action lies against a subdivision of a state, created solely for a public purpose, by a general law applicable to all such subdivisions, for an injury received by a person through the neglect of the officers of such subdivision, even though, by the general law, such subdivision may be given a *quasi* corporate existence, the better to enable it to perform the public service imposed by the law.

The English cases, the cases in the New England States and in some of the other states in which such *quasi* municipal corporations exist, illustrate this rule. Those cases are but the practical application and proper extension of the rule that a state cannot be made liable to an action for the neglect or misfeasance of its officers, through which a person sustains injury, unless by statute the action is given.

In so far as a *quasi* corporation exercises powers exclusively public in their character, forced upon it without its consent, simply because the state can thus, through such local agencies, more easily and effectively discharge duties essentially its own, it is but proper that no action should be maintained against it for the negligence, or even misfeasance, of its officers, unless the action be given by an expression of the same sovereign will which arbitrarily imposed the duty.

The necessity for imposing, even on such *quasi* corporations, a liability for the negligence and misfeasance of their officers, and for giving actions against them, through which such liability may be enforced, has generally been felt, and hence statutes ordinarily have been enacted, fixing the liability and giving the action.

The rule is very clearly presented in the case of Bigelow v. Inhabitants of Randolph, 14 Gray, 543, in which the court said: "It was said by Chief Justice Parsons, half a century since, in Riddle v. Proprietors of Locks and Canals, 7 Mass., 187, and adjudged by a full court in Mower v. Inhabitants of Leicester, 9 Mass., 247, that a private action cannot be maintained against a town, or other *quasi* corporation, for a neglect of corporate duty, unless such action be given by statute. And so it has since been held by this and other courts. This rule of law, however, is of limited application. It is applied, in case of towns, only to the neglect or omission of a town to perform those duties which are imposed on all towns, without their corporate assent, and exclusively for public purposes; and not to the neglect of those obligations which a town incurs when a special

duty is imposed on it, with its consent, express or implied, or a special authority is conferred on it at its request. In the latter cases, a town is subject to the same liabilities for the neglect of those special duties, to which private corporations would be if the same duties were imposed or the same authority were conferred on them — including their liability for the wrongful neglect as well as the wrongful acts of their officers and agents. See the cases referred to in Eastman *v.* Meredith, 36 N. H., 295; Conrad *v.* Trustees of Ithaca, 16 N. Y., 158."

The case of Eastman *v.* Town of Meredith is one of much interest upon the subject under consideration, and may be consulted with much profit, as may the following cases and authorities: Rowe *v.* Portsmouth, 56 N. H., 291; Commissioners *v.* Duckett, 20 Md., 469; Commissioners *v.* Gibson, 36 Md., 229; Commissioners *v.* Baker, 44 Md., 1.

The tendency of the decisions is evidently to recognize the liability of even *quasi* corporations to suit not expressly given by statute, when injury results from the negligence of officials or agents exercising powers purely ministerial in reference to matters which cannot be said to pertain to duties purely public; to matters which, though in a restricted sense are public, yet more directly affect the welfare and pecuniary interest of the inhabitants of the *quasi* corporation, upon whose will rests the determination whether the given act shall be performed and how it shall be performed, and upon whom rests solely the expense of the work put in operation by themselves, through which, at least indirectly, they receive benefit in which the general public, if at all, but slightly participates.

Counties and like *quasi* corporations are created by the legislature by general laws without reference to the wish of their inhabitants, and thus for essentially public purposes.

Not so with towns and cities which are incorporated through special charters, which, like most special laws, are enacted at the request of those who are to be most directly benefited by them and with a view to this end.

The one is created for a public purpose as an agency of the state through which it can most conveniently and effectively discharge the duties which the state, as an organized government, assumes to every person, and by which it can best promote the welfare of all.

The other, while to a given extent created for a public purpose, is so mainly for the reason that the existence of large towns and cities makes a system or degree of police there necessary which is not so in villages nor with a rural population; but the main and es-

sential purpose for which they are created is the advantage of the inhabitants of the corporation, and in so far as such corporations receive and exercise powers other than such as would be exercised by the state in and through the county organizations, this is essentially true.

Counties are declared, by the laws of this state, to be corporations; and they are municipal corporations in the sense that they are agencies "to regulate and administer the internal concerns of the locality in matters peculiar to the place incorporated, and not common to the state or people at large;" but at the same time the state makes use of the corporation, and of its property, such as jails and court houses, and of its officers, to exercise powers not strictly municipal, but in fact state powers, exercised for the state through the local officers within prescribed territorial limits.    1 Dillon, 93.

Counties are created by general laws, and while they are municipal corporations in a restricted sense, they are involuntarily so, and sustain to the state a relationship which a town or city incorporated does not sustain.    They are created to carry out a policy common to the whole state, and not mainly to advance the interest of the particular locality, and to bring advantage or emolument to the inhabitants of the municipality.

It would seem that, in so far as municipal corporations of any class, and however incorporated, exercise powers conferred on them for purposes essentially public — purposes pertaining to the administration of general laws made to enforce the general policy of the state,— they should be deemed agencies of the state, and not subject to be sued for any act or omission occurring while in the exercise of such power, unless, by statute, the action be given; that, in reference to such matters, they should stand as does sovereignty, whose agents they are, subject to be sued only when the state, by statute, declares they may be.

How far counties, as municipal corporations, if at all, may be liable for injuries resulting from misfeasance or neglect, it is unnecessary in this case to inquire.

In so far, however, as they exercise powers not of this character, voluntarily assumed — powers intended for the private advantage and benefit of the locality and its inhabitants,— there seems to be no sufficient reason why they should be relieved from that liability to suit and measure of actual damage to which an individual or private corporation exercising the same powers for a purpose essentially private would be liable.

Persons or corporations that voluntarily assume and undertake

the performance of a work, even though it be *quasi* public in its character, ought to be held to impliedly contract that they will exercise due care in its performance, and for a neglect in this respect should be liable for the resulting damage.

We do not wish, however, to be understood to assert that there is a contract between the state and a municipal corporation accepting a charter, but simply to assert that, when such a corporation accepts a charter giving defined powers, the law imposes the duty of faithfully exercising them, and gives an action for misfeasance or neglect in this respect to any person who may be injured by such failure of duty.

After having considered the true nature and liability of counties, towns, townships, boroughs, school districts, road districts and other organizations existing in some of the states, under general laws for the performance of public duties, as a part of the machinery of the state government, Judge Cooley thus speaks of municipal corporations accepting special charters from the state: " The reason which exempts these public bodies from liability to private actions, based upon neglect to perform public obligations, does not apply to villages, boroughs and cities which accept special charters from the state. The grant of the corporate franchise, in these cases, is usually made only at the request of the citizens to be incorporated, and it is justly assumed that it confers what to them is a valuable privilege. This privilege is a consideration for the duties which the charter imposes. Larger powers of self-government are given than are confided to towns or counties; larger privileges in the acquisition and control of corporate property; special authority is conferred to make use of the public highways for the special and peculiar convenience of the citizens of the municipality in various modes not permissible elsewhere.

" The grant by the state to the municipality of a portion of its sovereign powers, and their acceptance for these beneficial purposes, is regarded as raising an implied promise on the part of the corporation to perform the corporate duties, and as imposing the duty of performance, not for the benefit of the state merely, but for the benefit of any individual interested in its performance.

" In this respect these corporations are looked upon as occupying the same position as private corporations, which have accepted a valuable franchise on condition of the performance of certain public duties, are held by the acceptance to contract for the performance of those duties. In the case of public corporations, however, the liability is contingent on the law affording the means of per-

forming the duty, which, in some cases, by reason of restrictions upon the power of taxation, they might not possess. But assuming the corporation to be clothed with sufficient power by the charter to that end, the liability of a city or village, vested with control of its streets, for any neglect to keep them in repair, or for any improper construction, has been determined in many cases.

"And a similar liability would exist in other cases where the same reasons would be applicable."

The supreme court of the United States, in a number of cases, has held that municipal corporations with powers no broader, means no greater, and duty not more clearly imposed, than we find in the charter of the city of Galveston, are responsible for injuries which result from neglect to keep streets and other like public works in repair. Weightman v. City of Washington, 1 Black, 39; Chicago City v. Robbins, 2 Black, 418; Mayor v. Sheffield, 4 Wallace, 189; Evanston v. Gunn, 99 U. S., 660; Barnes v. District of Columbia, 91 U. S., 551. In the case last cited the court uses the following language: "It is denied that a municipal corporation (as distinguished from a corporation organized for private gain) is liable for the injury to an individual arising from negligence in the construction of a work authorized by it. Some cases hold that the adoption of a plan of such a work is a judicial act; and if injury arises from the execution of that plan, no liability exists. Child v. City of Boston, 4 Allen, 41; Thayer v. Boston, 19 Pick., 511. Other cases hold that for its negligent execution of a plan good in itself, or for mere negligence in the care of its streets or other works, a municipal corporation cannot be charged. City of Detroit v. Blackeby, 21 Mich., 84, is of the latter class, where it was held that the city was not liable for an injury arising from its neglect to keep its sidewalks in repair.

"The authorities establishing the contrary doctrine, that a city is responsible for its mere negligence, are so numerous and so well considered that the law must be deemed to be settled in accordance with them. English authorities: Mayor v. Henley, 2 Cl. & Fin., 331; Mersey Docks v. Gibbs; Same v. Penhallow, 1 H. Ld. Cas. (N. S.), 93; 7 H. & N., 439; Lan. Canal Co. v. Parnably, 11 Ad. & Ell., 223; Scott v. Mayor, 37 Eng. Law & Eq., 495. United States authorities: Weightman v. Washington, 1 Black, 39; Nebraska City v. Campbell, 2 id., 590; Robbins v. Chicago, 4 Wall., 658; Supervisors v. U. S., id., 435; Mayor v. Sheffield, id., 194. New York: Davenport v. Ruckman, 37 N. Y., 568; Requa v. Rochester, 45 N. Y., 129; Rochester W. L. Co. v. Rochester, 3 id., 463; Conrad v.

Ithaca, 16 id., 158; Barton v. Syracuse, 36 id., 54.   Illinois: Browning v. City of Springfield, 17 Ill., 143; Clayburgh v. City of Chicago, 25 id., 535; City of Springfield v. Le Claire, 49 id., 476. Alabama: Smoot v. Mayor of Wetumpka, 24 Ala. (N. S.), 112. Connecticut: Jones v. City of New Haven, 34 Conn., 1.   North Carolina: Meares v. Wilmington, 9 Ired., 73.   Maryland: County Commissioners of Anne Arundel County v. Duckett, 20 Md., 469. Pennsylvania: Pittsburg City v. Grier, 22 Penn., 54; Erie City v. Schwingle, id., 388.   Wisconsin: Cook v. City of Milwaukee, 24 Wis., 270; Ward v. Jefferson, id., 342.   Virginia: Sawyer v. Corse, 17 Gratt., 241; City of Richmond v. Long, id., 375.   Ohio: Western College v. Cleveland, 12 Ohio St., 377; McCombs v. Akron, 15 Ohio, 476; Rhodes v. Cleveland, 10 id., 159."

The following cases and authorities maintain the same proposition:   Bailey v. Mayor, etc., 3 Hill, 538; Mayor, etc., v. Furze, 3 Hill, 612; Weet v. Brockport, 16 N. Y., 161, n; Lloyd v. Mayor, etc., 1 Seld., 374; Storrs v. City of Utica, 17 N. Y., 104; Ring v. City of Cohoes, 77 N. Y., 83; Noonan v. City of Albany, 79 N. Y., 470; McCarthy v. City of Syracuse, 46 N. Y., 194.   Illinois: City of Lacon v. Page, 48 Ill., 499; City of Champaign v. Patterson, 50 id., 62; City of Bloomington v. Bay, 42 id., 503; City of Sterling v. Thomas, 60 id., 265; White et al. v. County of Bond, 58 id., 298; Town of Waltham v. Kemper, 55 id., 346.   Alabama: Allbrittin v. Mayor, 60 Ala., 486.   Wisconsin: Kenworthy v. The Town of Ironton, 41 Wis., 647; Milwaukee v. Davis, 6 Wis., 377.   Virginia: Noble and Wife v. The City of Richmond, 31 Gratt., 271.   Ohio: City of Dayton v. Pease, 4 Ohio St., 94.   Indiana: City of Logansport v. Wright, 25 Ind., 513.   Missouri: Blake v. City of St. Louis, 40 Mo., 570; Murtaugh v. The City of St. Louis, 44 id., 480.   Michigan: Dewey v. City of Detroit, 15 Mich., 311.   Connecticut: Jones v. City of New Haven, 34 Conn., 1.   Minnesota: Kobs v. City of Minneapolis, 22 Minn., 160; Simmer v. City of St. Paul, 23 Minn., 408.   Tennessee: Mayor, etc., v. Lasser, 9 Humph., 757.   Georgia: Mayor, etc., of Savannah v. Waldner, 49 Ga., 316.   Louisiana: O'Neil v. City of New Orleans, 30 La. Ann., 220.   New Hampshire: Wheeler v. Troy, 20 N. H., 80; Gilman v. Laconia, 55 N. H., 130.   Iowa: Wallace v. City of Muscatine, 4 Green (Ia.), 373.   Massachusetts: Child v. City of Boston, 4 Allen, 52; Oliver v. Worcester, 102 Mass., 489.

In the last case cited, the court thus clearly stated the rule: "The distinction is well established between the responsibilities of towns and cities for acts done in their public capacity, in the discharge of

duties imposed upon them by the legislature for the public benefit, and for acts done in what may be called their private character, in the management of property or rights voluntarily held by them for their own immediate profit or advantage as a corporation, although inuring, of course, ultimately to the benefit of the public.

"To render municipal corporations liable to private actions for omissions or neglect to perform a corporate duty imposed by general law on all towns and cities alike, and from the performance of which they derive no compensation or benefit in their corporate capacity, an express statute is doubtless necessary. . . .

"But this rule does not exempt towns and cities from the liability to which other corporations are subject, for negligence in managing or dealing with property or rights held by them for their own advantage or emolument. Thus, where a special charter, accepted by a city or town, or granted at its request, requires it to construct public works, and enables it to assess the expense thereof upon those immediately benefited thereby, by way of tolls or otherwise, the city or town is liable, as any other corporation would be, for an injury done to any person in the negligent exercise of the powers so conferred." See, also, Dillon on Municipal Corporations, 764; Cooley on Torts, 625; Cooley's Con. Lim., 303; Wharton on Negligence, 956 *et seq.;* Shearman & Redfield on Negligence, 125–133; Thompson on Negligence, 731–768, in which the cases bearing on the question are collected.

The character of corporate existence possessed by New England towns and cities, not existing under special charters, is very fully considered by Judge Dillon in his work on Municipal Corporations, 11–14, 763–796; and in the cases cited from those states, the decisions are all affected by the fact that the towns, cities or counties possessed only such corporate powers as were given to all such corporations by general laws, and were not municipal corporations created by special charters, at the wish of the inhabitants. This is true in the following cases: Oliver *v.* Worcester, 102 Mass., 490; Chidsey *v.* Canton, 17 Conn., 478; Reed *v.* Belfast, 20 Maine, 248; Baxter *v.* Turnpike Co., 22 Vt., 114; Mower *v.* Leicester, 9 Mass., 247; Providence *v.* Clapp, 17 How., 161. Several of these cases, however, recognize the common law liability of municipal corporations created by special charter.

Chosen Freeholders *v.* Strader, 3 Harr. (N. J. L.), 108; Cooley *v.* Chosen Freeholders of Essex, 3 Dutch., 415, and Livermore *v.* Chosen Freeholders of County of Camden, 29 N. J. (L. R.), 245, are all cases in which injury resulted from failure to keep in repair

county bridges, and were decided on the same grounds as the New England cases.

The case of Pray v. The Mayor, etc., 32 N. J. (L. R.), probably rests on the same grounds, but the report of the case does not render this certain; but as the cases above referred to are given as authority for the decision, we take this to be true.

Brinkmeyer v. City of Evansville, 29 Ind., 187, decides that a city, incorporated by special charter, is not responsible for property destroyed by fire, where the city had not exercised such legislative or judicial power as it might have exercised under its charter; but in the opinion the court recognized the liability of a municipal corporation for injury resulting from its neglect to keep in proper repair streets which had been opened, in the following language: "There is but little, if any, analogy between the powers and duties devolving on these municipal governments in the organization of a fire department and those in relation to the improvement of streets and the construction of bridges, culverts and sewers. A street, when improved, is a public highway, open to the free use of all; and it is an old and well established principle that a corporation is bound to keep it in proper repair or condition, and is responsible for the damage caused by a neglect of that duty."

Duke v. Mayor, etc., of Rome, 20 Ga., 635, only decides that a municipal corporation is not liable for an error of judgment by a mayor and council in refusing to grant a license.

In City of Richmond v. Long, 17 Gratt., 375, it was held that the city was not liable for the value of a slave placed in the city hospital to be treated for small-pox, who escaped therefrom and came to his death by exposure; and so, because the city in establishing the hospital seems to have acted under a general law which was intended to provide means to prevent the spreading of contagious diseases, the servants of the city in this respect being considered public officers for whose neglect the city was not responsible.

Prather v. City of Lexington, 13 B. Monroe, 559, and Western College v. City of Cleveland, 12 Ohio St., only decide that a municipal corporation is not responsible for property within its territorial limits destroyed by a mob.

Dargan v. Mayor, etc., simply holds that a municipal corporation, having authority under its charter to pass ordinances forbidding slaves to be abroad at night, or to assemble together without lawful permission, was not liable, at the suit of an owner, for the loss of a slave who was negligently killed by an officer of the city guard in attempting to arrest him for a breach of such ordinance.

The English cases referred to in the brief of counsel for appel
lant are either cases not against municipal corporations incorporated
by special charter, or cases in which the liability of heads of de-
partments of the government, for the defaults or neglects of persons
appointed by them, was under consideration.

The case of Detroit *v.* Blackeby, 21 Mich., 84, goes to establish
fully the non-liability of municipal corporations for injury resulting
from neglect to keep streets in repair; but it cites for its support a
line of decisions which to us seem not the most applicable, and
ignores the line of English and American cases to which we have
partially referred in support of an opposite rule; besides, the case
is much weakened by the dissenting opinion of Judge Cooley, and
it seems to be in conflict with the decision of the same court in
Dewey *v.* City of Detroit, 15 Mich., 311.

In the case of City of Navasota *v.* Pearce, 46 Tex., 527, much of
the reasoning of the court would lead to the same result as that
reached in the case of Blackeby *v.* Detroit; but in the case it does
not appear that the streets of the city of Navasota were not in good
repair, nor that the ditch into which the horse fell was within the
street over which the city, by its charter, was given control, nor so
near to the street as to make it the duty of the city to erect protec-
tion against it; nor does it appear that there was any want of due
care in the city. We cannot now have access to the transcript to
ascertain what the facts really were; but we know from the opinion
itself that it was not intended to lay down the broad rule that a
municipal corporation, created by a special charter, or by the vol-
untary action of the inhabitants of a given territory, under the laws
of this state, which permit incorporation under the general law
enacted for that purpose, is not liable to an action for an injury
which may result from the neglect of such corporation to keep its
streets in proper repair; for the opinion in the case expressly limits
its application to the very case then before the court. That such
corporations in many respects may be responsible for their neglects
or misfeasances is recognized in Peck *v.* City of Austin, 22 Tex.,
265. The question involved is incidentally noticed in Keller *v.*
Corpus Christi, 50 Tex., 628, and in Conway *v.* City of Beaumont,
decided at last Galveston term (61 Tex., 10).

The question is one to be decided by the application of common
law principles, and to ascertain what those principles are, we can
and ought to resort to common law authorities, and doing so, to our
minds, the weight of authority holding that such a corporation,
created by special charter, is liable for an injury resulting from its

neglect to keep its streets in repair, is so overwhelming that we feel constrained to hold the law so to be, and that an action lies for such an injury without its being expressly given by statute.

The court gave the following charge:

6. "If the injury occasioned did not result from the slipping into the ditch alone, but was produced by the accidental lighting upon a broken bottle or other piece of glass or sharp instrument, and thereby the injury was inflicted, the city would not be responsible for such accidental injury, resulting from such a cause, if unknown to the city, and such a cause the city should not be expected to know without special notice, or without it had existed so long that by ordinary care it would have been discovered and known."

There were but two possible causes of the injury, under the evidence, if there was no failure to exercise due care by the plaintiff.

The fall must have resulted from the defective sidewalk, or ditch contiguous to it, or from defects in both, and the injury must have resulted from the fall; or, the fall so resulting, the plaintiff must have been injured by falling on some substance in the ditch.

Under the other charges given, the jury must have found that the plaintiff used due care, and must have found that there was neglect on the part of the city, or their verdict would necessarily have been different.

If there were broken bottles, other pieces of glass, or sharp instruments in the ditch, without which the injury, notwithstanding the fall, would not have resulted, even then, though these things could not have proved hurtful without the fall, if the fall was caused by the defective condition of the sidewalk, then it must be deemed the proximate cause of the injury.   Ring v. City of Cohoes, 77 N. Y., 83; Palmer v. The Inhabitants of Andover, 2 Cush., 601.

If the injury resulted from one of the causes, or from the two combined, if such cause would not have existed but for the neglect of the city, then it would be liable, if there was no failure on the part of plaintiff to exercise due care.

This being true, the charge of the court was sufficiently full in this respect, and it was not error to refuse the first instruction asked by the defendant, even if it had presented correct legal propositions.

The charge as asked, however, in effect contained the proposition that the city would not be responsible if the injury would not have occurred but for the glass or other sharp substance in the drain; and this, without reference to whether it was negligence in the city, under all the circumstances, to permit the drain to be in that condition.

The actions of the court in refusing to give instructions asked have all been considered, and in so far as they were proper, the instructions were contained in the charge of the court given; some of them, however, were not correct as propositions of law, and on this account were properly refused.

The assignments of error which relate to the verdict and judgment point out no particular errors, except that which relates to the question of excessive verdict and judgment.

The verdict seems to us large; yet the injuries received were severe and permanent, such as render the plaintiff a cripple for life, and in such case we do not feel that we would be authorized to substitute our judgments for that of the jury that tried the cause, there being nothing to indicate that the verdict was the result of any undue influence, or error of law.

The charge of the court was very fair; there was evidence from which the jury might reasonably conclude that the injury resulted from the negligence of the city, and the question of amount of damage was one to which we cannot apply any fixed and unbending standard, and so, as the case comes before us, it must be affirmed.

We have to regret that in the decision of this case, involving as it does a question of great importance, we have not had the advantage of consultation with the chief justice; that the case could not be passed upon by the full bench.

The judgment is affirmed.

                                                  AFFIRMED.

[Opinion delivered June 27, 1884.]

Chief Justice WILLIE, having been of counsel, did not sit in this case.