### CITY OF YSLETA V. C. S. BABBITT.

#### No. 464.

1. **Municipal Corporation—Liability—Irrigation System.**—Where a city incorporated under the general law, by virtue of article 374 of the Revised Statutes, takes charge of an irrigation and water system within its limits, and places it under the management of its officers, it will be liable for the tortious acts of such city officers in wrongfully denying a citizen the proportion of water to which he is entitled.

2. **Same—Ratification.**—The system of water supply being a subject of purely local benefit, and the act of the officer in withholding the water being within the scope of his employment, the liability therefor would exist without a ratification of the act by the city.

3. **Same—Fact Case—Charge Without Evidence.**—The damage to plaintiff having resulted solely from the water being withheld, and not from a change made in the irrigation ditch, it was error to submit the issue of damages to the jury in connection with such change as a cause.

4. **Practice on Appeal—Motion for New Trial Below.**—An assignment of error presenting matter relating to the charge not presented in the motion for new trial below, will not, it seems, be considered.

APPEAL from the County Court of El Paso. Tried below before Hon. F. E. HUNTER.

*Zeno B. Clardy,* for appellant.—The city of Ysleta, as a municipal corporation, has no authority to contract with plaintiff for irrigating his farming lands; nor was it liable in damages to plaintiff for any trespasses committed on his lands, nor for any acts of its officers or agents in depriving him of water for irrigating said lands, and not being originally liable, could not render itself liable to plaintiff by ratifying the alleged trespasses of its officers and agents. Rev. Stats., art. 340; Pye v. Peterson, 45 Texas, 312; Dill. Mun. Corp., secs. 443, 447, 457, 966, 969, 970; Hunt v. City of Brownsville, 65 Mo., 620; Whittaker's Smith on Neg., 120; Smith v. City of Rochester, 76 N. Y., 506; Anthony v. Adams, 1 Metc. (Mass.), 284.

*A. G. Foster* and *N. B. Bendy,* for appellee.—1. A municipal corporation may become liable in an action ex contractu for the breach of a contract to furnish water (notwithstanding the adverse ruling of the court below); so that if this charge is capable of such construction, the limitation placed thereon by the court makes it favorable to appellant. Rev. Stats., arts. 342, 374; City of Galveston v. Posnainsky, 62 Texas, 118; Hitchcock v. City of Galveston, 96 U. S., 341; Smith v. Nashville, 88 Tenn., 464; 12 S. W. Rep., 924; Bank v. City of Lowell, 156 Mass., 556; 10 L. R. A., 122; Stock v. City of Boston, 149 Mass., 410; Baily v. City of New York, 3 Hill, 531; Oliver v. Worcester, 102 Mass., 489; 1 Dill. Mun. Corp., sec. 472, and note; Id., sec. 443, and note; 1 Beach Pub. Corp., sec. 216.

2. A municipal authority is liable in actions ex delicto, while acting within the scope of its charter powers. If a municipal corporation, empowered to provide the city with water, acting in the scope of said power, forcibly takes water and water privileges in which a citizen has a vested right, and deprives him thereof, thereby inflicting injury upon him, it is responsible to him in damages. Rev. Stats., art. 374; Galveston v. Posnainsky, 62 Texas, 124; 15 Am. and Eng. Encyc. of Law, 1141, and note 3; Id., 1150, 1155, note 1; Jones Neg. Mun. Corp., secs. 23–25, 37, 40, 148; Dill. Mun. Corp., 4 ed., secs. 966, 967, 971; Wagner v. Rock Island, 146 Ill., 139; City of Boulder v. Fowler, 18 Pac. Rep., 337; Levy v. Salt Lake City, 3 Utah, 63; 2 Am. and Eng. Corp. Cases, 611; Waterworks v. Atlantic City, 15 Id., 327; Wilkins v. Rut-

land, 25 Id., 49; Stock v. City of Boston, 25 Id., 143; Bank v. Lowell, 152 Mass., 556.

JAMES, Chief Justice.—The first count of the petition was stricken out on demurrer, leaving a claim asserted by plaintiff against the city for $995, by reason of alleged negligent and wrongful acts committed by the city's officers or agents in reference to an acequia, and in the distribution of water therefrom in the summer of 1892, by which plaintiff was deprived of water and his crops thereby lost.

The action of the court on the pleadings we need not notice, as no question is presented concerning them.

There was a verdict in plaintiff's favor for $500. We can detect no error as is claimed by the first assignment. The fourth and seventh clauses of the charge were not inconsistent. The jury could not from the charges given have failed to understand that they were directed not to consider defendant's liability in view of any contract to furnish water, and that defendant's liability, if it existed at all, must result from the tortious acts of its officers. It seems to us that the relation between the city and its inhabitants, as hereinafter explained, exhibits some of the features of contract, and the reason generally given in the decisions for holding a municipal corporation liable for the negligent or wrongful acts of its agents and officers is, that the corporation having voluntarily undertaken to exercise a power, there is an implied contract that it will exercise due care in its performance. Galveston v. Posnainsky, 62 Texas, 127.

The facts necessary to create a liability for a tort in such a case would necessarily develop an implied contract, and it seems to be immaterial through which view of the case the remedy is sought.

The second and fifth assignments are presented together, and bear on the eighth clause of the main charge and second special charge given, which are as follows:

"You are instructed, that if you find for plaintiff you may assess such damages as from the evidence you believe he suffered by the removal of said ditch, or the change in the grade of said ditch, taken in connection with any damages you may assess as loss to his crop, if you find he suffered any such loss, as shall not exceed in the aggregate $995.

"8. You are instructed, that if the city of Ysleta assumed control of said acequias, appointed alcaldes, etc., and that the said alcalde or alcaldes did so mismanage the distribution of water, and forcibly take and use the water, and willfully prevented plaintiff from receiving his portion of the water, then you are instructed, that the act of said alcalde or alcaldes would not be the act of the corporation, and the corporation would not be liable in damages for said acts, unless said corporation ratified said acts of the alcalde or alcaldes."

In passing on these assignments, we shall have to mention to some extent the evidence.

It appears that an acequia has existed for many years leading from the Rio Grande to the town of Ysleta, supplying the inhabitants with water for domestic and irrigation purposes. The ditches were originally maintained and operated by the people. The city became incorporated, and by common consent of the people it assumed control, operation, and care of the ditches, and undertook these duties with respect to its inhabitants. The plan adopted for the performance of this work was in pursuance of a custom; an officer called the alcalde mayor, and certain subordinates, were appointed by the city council, and to them was committed the duty (so far as can be determined from this record) of controlling the water, regulating its distribution, and the cleaning and working of the ditches, and to determine when consumers could have water, and in what proportion. Ordinances were passed forbidding, under pain of fine and imprisonment, any person to put a dam or gate across any ditch or to take water therefrom without the consent of the alcaldes and officers, or to interfere with them in respect to said duties, and these offenders were prosecuted in the recorder's court. The people requiring water would be notified by the city in the beginning of the year to state how much water each person wanted the coming season. Then the city would lay out the work to be done, and the people would clean out the ditches, and no person was allowed to use water unless he paid for that year's allowance in money or work, and each person was required to contribute in work or money in proportion to the water taken by him.

Plaintiff's land was at or near the river, and was the first place on the line of the acequia, and appears to have been within the corporate limits of Ysleta, and between this place and the settled portion of the city, a distance of several miles, were small farms along the line of the ditch, all dependent on the acequia for water necessary to raise products. The line of the main acequia near the river was changed in 1889 and placed more distant from plaintiff's land, and in 1891 the new line of the acequia was deepened, without deepening that part of the old line which conducted the water to plaintiff's land, thereby rendering it necessary, in order to raise the water in the new line of the acequia a sufficient height to run into plaintiff's ditch, for a bulkhead or gate to be constructed and used. Plaintiff testifies, that there was sufficient water for all consumers in 1892, and that by the use of this bulkhead he could have made his crops in 1892, notwithstanding the change in the course and depth of the new line of the acequia; that the officers under these circumstances refused to allow him to take water on certain occasions when water was needed and he was entitled to it, and removed the bulkhead and thereby deprived him of water, in consequence of which his crops were lost. There was evidence that defendant had become entitled to water sufficient to mature his crops that season.

With this reference to the testimony our views as to defendant's liability may be explained, and we have sought to refer to the testimony sufficiently to make the case understood.

Ysleta was incorporated under our general statute relating to cities and towns. By article 374 of said act, it was authorized "to provide, or cause to be provided, the city with water; to make, regulate, and establish public wells and cisterns, hydrants, and reservoirs, in the streets or elsewhere within said city, or beyond the limits thereof, for the extinguishment of fires and the convenience of the inhabitants, and to prevent the unnecessary waste of water."

We are of opinion, that by this article the city was authorized to assume the control and regulation of the water supply by means of this acequia not only for domestic uses, but also for purposes of irrigation, within its limits, and if it did so, it was obligated to permit its use in due proportion by those who had entitled themselves to it. Holman v. Pleasant Grove City, 30 Pac. Rep., 72.

By assuming these functions and exercising them through officers of its selection, the city would be liable in damages for the negligence or other tortious acts of its officers done in the course and within the scope of their duties. The operation of this system of water supply was a subject of purely local benefit, and does not fall within those acts of a governmental character which a city may perform without liability to individuals. City of Galveston v. Posnainsky, 62 Texas, 127; Wagner v. Rock Island, 146 Ill., 139; Dill. Mun. Corp., sec. 966. If there is any error in the eighth charge, it is in requiring the city to have ratified the act of its officer, in order to be liable, and of this only the plaintiff could complain.

There is a line of decisions which hold that a person is not liable in any case for the willful or malicious act of his servant or agent (as distinguished from an act of negligence), unless the principal ratifies the act. Mecham on Agency, secs. 740, 741. But it seems to be now settled on the weight of authority that liability exists in such a case without a ratification, where the act is done within the scope of the employment. Mecham, supra; also Railway v. Anderson, 17 S. W. Rep., 1039. The rule is one of familiar application in this respect to private corporations, and we know of no distinction in this respect in favor of a municipal corporation. Henderson v. Railway, 17 Texas, 560.

The evidence as contained in this record indicates that one of the duties of the officers was to permit parties to use water, or to prevent a party from using it except as he was entitled to it. It seems to us clear, that in case the officer should willfully deprive a consumer of water without cause, when he was entitled to it, and needed it, it would be an act in the course of and within the scope of his duty, and one for which the city would be directly liable.

With regard to the second charge, it will be noticed that the court allowed the jury to find damages for removal and change in grade of the ditch, and in connection with this charge the defendant assigns as error that the evidence did not justify it.

It seems to us that this assignment is well taken. From plaintiff's own testimony, we find that the change made in the course of the ace-

quia and the deepening of it did not prevent his getting water in that year, had the gate or bulkhead at that place been suffered to remain and be used. He both alleged and testified, that the water in 1892 was abundant for everybody interested, himself included; and his witnesses testified, that by the use of the bulkhead all the water in the acequia could have been turned into the old line of the ditch. Upon this evidence, it is clear his losses in that year were not attributable to the changes in the acequia, but, if they occurred, resulted from the acts of the officer in preventing him from obtaining water.

We believe, upon the evidence as it stood, the court should not have submitted the issue of damages in connection with the removal and change in grade of the ditch as a cause, and we are unable to tell to what extent this may have affected the verdict.

After what has been said, we need not notice the seventh assignment of error.

The third assignment of error presents matter relating to the charge not presented in the motion for new trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered October 31, 1894.

NEILL, Associate Justice, did not sit in this case.