NO.
12-07-00085-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

BRIDGET
FOWLER            §                      APPEAL FROM THE SEVENTH

AND PHIL FOWLER,

APPELLANTS

 

V.        §                      JUDICIAL
DISTRICT COURT OF

 

TYLER INDEPENDENT

SCHOOL DISTRICT,

APPELLEE   §                      SMITH COUNTY, TEXAS

                                                                                                                                                            

OPINION

            Bridget
and Phil Fowler appeal the trial court’s dismissal of their premises liability
lawsuit against the Tyler Independent School District (TISD) for want of
jurisdiction based upon TISD’s sovereign immunity from suit.  In their sole issue, the Fowlers assert that,
at the time of the injury forming the basis of their lawsuit, TISD was not
immune from suit.  We affirm.

 

Background

            On December 5, 2003, the Fowlers
were attendees as spectators at a high school football playoff game between
Gilmer High School and Atlanta High School, two public schools within the State
of Texas.  TISD, a public school district
and governmental unit of the State of Texas, provided the venue for this event,
renting their football stadium, Trinity Mother Frances Rose Stadium, to the two
schools.  During that event, Bridget
Fowler slipped and fell, breaking her leg.








            On December 1, 2005, almost two
years after the incident in question, the Fowlers filed suit against TISD
alleging that the stadium was in an unreasonably dangerous condition at the
time of the football game and that TISD had failed to properly inspect and
maintain the stadium and to provide adequate warnings of the stadium’s unsafe
condition.  On January 5, 2006, TISD
filed its original answer.  On October 3,
2006, TISD filed a plea to the jurisdiction, alleging sovereign immunity from
suit.  The trial court granted TISD’s
plea.  This appeal followed.

 

Proprietary Capacity

            In their sole issue, the Fowlers
allege that, at the time of Bridget Fowler’s injury, TISD was not immune from
suit.

Standard
of Review

            Sovereign immunity from suit defeats
a trial court’s subject matter jurisdiction. Tex. Dep’t of Transp. v.
Jones, 8 S.W.3d 636, 639 (Tex. 1999). 
Subject matter jurisdiction is essential to the authority of a trial
court to decide a case. Tex. Ass’n of Bus. v. Tex. Air Control Bd.,
852 S.W.2d 440, 443 (Tex. 1993).  A plea
to the jurisdiction challenges the trial court’s authority to determine the
subject matter of a specific cause of action. Starkey ex rel. Ragsdale v.
Andrews Ctr., 104 S.W.3d 626, 628 (Tex. App.–Tyler 2003, no pet.).  If a party believes that the plaintiff’s
petition does not show jurisdiction and cannot be amended to allege jurisdiction,
the party may file a plea to the jurisdiction at any time.  Id. 


            Because subject matter jurisdiction
presents a question of law, we review the trial court’s decision to grant a
plea to the jurisdiction de novo. Mayhew v. Town of Sunnyvale, 964
S.W.2d 922, 928 (Tex. 1998).  In
reviewing a plea to the jurisdiction, we review the pleadings and any evidence
relevant to the jurisdictional issue. Tex. Dep’t of Criminal Justice v.
Miller, 51 S.W.3d 583, 587 (Tex. 2001). Standing, which is a component
of subject matter jurisdiction, requires the pleader to allege facts that
affirmatively demonstrate the trial court’s jurisdiction to hear the case.  See Tex. Ass’n of Bus., 852
S.W.2d at 446.

Discussion

            Because it is a governmental unit, a
school district is immune from suit under the doctrine of sovereign immunity.
See LeLeaux v. Hamshire-Fannett Indep. Sch. Dist., 835 S.W.2d 49, 51
(Tex. 1992).  The doctrine of sovereign
immunity bars suit against the State unless the State has given consent to be
sued.  Mo. Pac. R.R. Co. v.
Brownsville Navigation Dist., 453 S.W.2d 812, 814 (Tex. 1970).  Here, the Fowlers do not claim that sovereign
immunity from suit has been waived by consent. 
Instead, because TISD was renting its stadium to the two high schools, the
Fowlers argue that TISD was acting in a proprietary capacity at the time of
Bridget Fowler’s injury, and therefore was not protected by sovereign immunity
from suit.

            In 1884, the Texas
Supreme Court first carved out an exception to sovereign immunity by defining a
municipality’s liability in terms of its governmental and proprietary
functions. See City of Galveston v. Posnainsky, 62 Tex. 118, 127
(1884).  In that case, the court reasoned
as follows:

 

It would seem that, in so far as municipal corporations
. . . exercise powers conferred on them for purposes essentially public–purposes
pertaining to the administration of general laws made to enforce the general
policy of the state,–they should be deemed agencies of the state, and not
subject to be sued for any act or omission occurring while in the exercise of
such power . . . ; that, in reference to such matters, they should stand as
does sovereignty, whose agents they are, subject to be sued only when the
state, by statute, declares they may be.

 

                                . . . .

 

In so far, however, as they exercise powers not of
this character, voluntarily assumed–powers intended for the private advantage
and benefit of the locality and its inhabitants,–there seems to be no
sufficient reason why they should be relieved from that liability to suit and
measure of actual damage to which an individual or private corporation
exercising the same powers for a purpose essentially private would be liable.

 

 

Id.  Although courts in the past have differed on
the scope of sovereign immunity and on which subdivisions of the state may
exercise proprietary functions, it is now the settled law of this state that
sovereign immunity extends to all agencies, political subdivisions, and other
institutions that are derived from the state’s constitution and laws. Dillard
v. Austin Indep. Sch. Dist., 806 S.W.2d 589, 593 (Tex. App.–Austin
1991, writ denied) (per curiam op. on reh’g), overruled on other grounds by Fed. Sign v.
Tex. S. Univ., 951 S.W.2d 401(Tex. 1997), and superseded by statute
on other grounds as stated in Gen. Servs. Comm’n v. Little-Tex Insulation
Co., Inc., 39 S.W.3d 591, 598 (Tex. 2001).  The only exception to this general rule of
sovereign immunity is that a municipality is not immune for its proprietary
functions, the principle expressed in 1884. 
Id. at 593-94.

            Here, the Fowlers have asked us to
apply this exception, which relates to municipalities, to a school
district.  However, as early as 1938, the
Texas Supreme Court held that

 








[t]here is quite a distinction between a school
district and a city or town.  Cities and
towns exercise a dual function, to wit, governmental and proprietary, while a
school district is purely a governmental agency and exercises only such powers
as are delegated to it by the state.  It
performs no proprietary functions which are separate and independent of its
governmental powers.

 

 

Braun v.
Trs. of Victoria Indep. Sch. Dist., 114 S.W.2d 947, 950 (Tex. Civ. App.–San
Antonio 1938, writ ref’d).

            In 1991, the Austin Court of
Appeals, applying that precedent, said that

 

[a]n independent school district is an agency of the
state which carries out only governmental functions, and, consequently, is
entitled to [sovereign] immunity. . . . [A] school district has no
proprietary functions . . . . Because we believe that Braun,
which states that an independent school district carries out only governmental
functions, is still the law, we conclude that an independent school district is
not a local unit of government similar to a municipality.

 

 

Dillard,
806 S.W.2d at 594-96; see also Stout v. Grand Prairie Indep. Sch. Dist.,
733 S.W.2d 290, 296 (Tex. App.–Dallas1987, writ ref’d n.r.e.) (“Since
a school district is purely a governmental agency and exercises only such
powers as are delegated to it by the state, it performs no proprietary
functions that are separate from governmental functions.”); Gravely v.
Lewisville Indep. Sch. Dist., 701 S.W.2d 956, 957 (Tex. App.–Fort Worth
1986, no writ) (“[It is a] well established rule of law that generally all
authorized functions of a school district are governmental in nature and a
school is therefore immune from suit for injuries sustained at any school
sponsored activity or function.”).  This
interpretation was recently reaffirmed by the Austin Court. See Hudspeth
v. Chapel Hill I.S.D., No. 03-06-00243-CV, 2007 WL 1647818, at *4 (Tex.
App.–Austin June 8, 2007, no pet.) (mem. op.). But see Barr v. Bernhard,
562 S.W.2d 844, 846 (Tex. 1978) (“The law is well settled in this state that an
independent school district is an agency of the state and, while exercising
governmental functions, is not answerable for its negligence in a suit sounding
in tort.”); McManus v. Anahuac Indep. Sch. Dist., 667 S.W.2d 275,
278 (Tex. App.–Houston [1st Dist.] 1984, no writ) (declining to decide whether Barr
is authority for the proposition that a school district can engage in
some kind of activity other than governmental functions, and, therefore, lose
its immunity from suit).  “No Texas
appellate court, so far as we know, has ever held that a school district has served
in a non-governmental capacity.” Gravely, 701 S.W.2d at 957.








            In this case, TISD is a public
school district and, thus, a purely governmental agency that exercises only
such powers as are delegated to it by the State of Texas. See Braun,
114 S.W.2d at 950; Dillard, 806 S.W.2d at 594; Gravely,
701 S.W.2d at 957.  As such, it could
not, as a matter of law, have been acting in a sufficiently proprietary
capacity to shed its sovereign immunity at the time of Bridget Fowler’s injury.
See id.  Therefore, TISD
enjoyed sovereign immunity from suit. See id.             Even
if it were theoretically possible for TISD to act in a proprietary capacity,
the result would not change.

 

Public schools are conducted for the benefit of the
entire state . . . and it matters not whether such schools are conducted by the
trustees of a common school district or trustees of an independent
district.  It is not a function
undertaken for the private advantage and benefit of the locality and its
inhabitants. . . . Education is not of local interest, but is statewide.  The state is interested as much in one child’s
education as another’s, and it matters not in what locality it resides.

 

 

Braun,
114 S.W.2d at 949-50.  Therefore,
activities of a public school district that contribute to the education of the
state’s youth are not proprietary because they are not undertaken for the
private advantage and benefit of the locality and its inhabitants but for the
benefit of the entire state. Id.; see Posnainsky,
62 Tex. at 127.

            The primary purpose of
interscholastic athletic programs is the educational benefit accruing to the
students involved in these programs. Garza ex rel. Garza v. Edinburg
Consol. Indep. Sch. Dist., 576 S.W.2d 916, 918 (Tex. Civ. App.–Corpus
Christi 1979, no writ).  Nothing could be
more in tune with the governmental function of school districts, providing
education benefitting the State of Texas. Id.  The playoff game in question here was part of
a statewide interscholastic athletic program. 
Like their regular season counterparts, playoff games carry as their
primary purpose the education of the students involved. See id.;
see also Gravely, 701 S.W.2d at 957.  Further, because such playoff games
educate students, they, as part of the statewide public school system, serve to
benefit the State of Texas in the same way as any other public educational
activity. See Gravely, 701 S.W.2d at 957; Garza,
576 S.W.2d at 918.

            The fact that TISD rented the
stadium in question does not affect this reasoning.  This was not a proprietary act but a
cooperative sharing of resources among three school districts.  These districts were essentially sharing
their resources in a way that better allocated them for the benefit of the
statewide public school system.  As a
result of this allocation, TISD was provided additional funds to further its
mission of education while the other districts were provided a venue for an
interscholastic school function, a primarily educational event.  Therefore, even if it were possible for TISD to
act in a proprietary capacity, it was not doing so at the time of the injury in
question. See Braun, 114 S.W.2d at 949-50; Gravely,
701 S.W.2d at 957; Garza, 576 S.W.2d at 918.  We overrule the Fowlers’ sole issue.

 

Disposition

            We affirm the
trial court’s order of dismissal.

 

 

 

                                                                                                    BRIAN HOYLE   

                                                                                                               Justice

 

 

Opinion delivered August 15,
2007.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)