**LAKE LBJ MUNICIPAL UTILITY DISTRICT, Appellant,**

v.

**Bennett COULSON & C.A.E., Inc., Appellees.**

**Bennett COULSON, Appellant,**

v.

**LAKE LBJ MUNICIPAL UTILITY DISTRICT, Appellee.**

Nos. 14,130, 14,131.

Court of Appeals of Texas, Austin.

Aug. 12, 1992.

Rehearing Overruled Oct. 21, 1992.

Randall D. Wilkins, Houston, for appellant.

Charles Dippel, Houston, for appellees.

Before POWERS, ABOUSSIE and KIDD, JJ.

## ON REMAND

## ON MOTION FOR REHEARING

POWERS, Justice.

We grant the motions for rehearing of Lake LBJ Municipal Utility District and Bennett Coulson and C.A.E., Inc. We therefore withdraw the opinion and judgment of August 30, 1991, and substitute this opinion.

Bennett Coulson and C.A.E., Inc. recovered judgment on a jury's verdict in their suit against the Lake LBJ Municipal Utility District for sums allegedly due under a written contract to furnish the District various engineering services.[1] We have twice reversed the trial-court judgment and remanded the cause for a new trial based on errors assigned by the District; in each instance, the Supreme Court of Texas has reversed our judgment and remanded the cause for our further consideration. *See Lake LBJ Mun. Util. Dist. v. Coulson*, 692 S.W.2d 897 (Tex.App.1985) (*Coulson I*), rev'd, 734 S.W.2d 649 (Tex.1987) (*Coulson II*), on remand, 771 S.W.2d 145 (Tex.App. 1988) (*Coulson III*), rev'd, 781 S.W.2d 594 (Tex.1989) (*Coulson IV*). We refer the reader to these earlier opinions for a description of the controversy.

In its original brief in this Court, the District assigned thirty-two points of error to the trial-court judgment. The Engineer brought three cross-points as well. In its opinions, the supreme court decided eight of those points of error. This Court decided sixteen additional points of error. Eleven points of error remain to be decided. Because the procedural history of this case is so complex, however, we will discuss all of the issues to a greater or lesser extent so the reasons for our holdings will be readily apparent.

### THE JURY QUESTIONS

In its first eight points of error, the District complains of the jury questions submitted by the trial court. In our first opinion in this cause, we held the trial court committed reversible error when it refused to supply in the charge, by definition, instruction, or the phrasing of the first question, a reasonable standard of skill and diligence that would have enabled the jury to determine whether the Engineer's plans

1. In our discussion hereafter, we shall refer to Coulson and C.A.E., Inc. as "the Engineer" and to Lake LBJ Municipal District as "the District."

and specifications met that standard and therefore established his right to recover on the contract. *Coulson I*, 692 S.W. at 907. The supreme court held the submitted issues "properly placed the respective burdens and fairly submitted the respective claims of Coulson and the District." *Coulson II*, 734 S.W.2d at 652.

On remand, we again reversed the judgment and remanded the cause to the trial court based on, among other reasons, our holding that the first question constituted an impermissible comment on the weight of the evidence. *Coulson III*, 771 S.W.2d at 150–51. The supreme court again reversed our judgment, holding the question did not impermissibly comment on the weight of the evidence. *Coulson IV*, 781 S.W.2d at 597.

It is our understanding that the supreme court's two opinions dispose of the first eight points of error. In those points, the District complains the trial court erred by (1) submitting question number one and (2) omitting the District's requested questions on whether the Engineer substantially complied with the terms of the contract and performed in a good-and-workmanlike manner. We believe the supreme court rejected these claims by its holding that the submitted issues "properly placed the respective burdens and fairly submitted the respective claims" of the parties. We conclude, therefore, that the supreme court overruled the District's first eight points of error.

In its twenty-ninth, thirtieth and thirty-first points of error, the District complains the trial court also erred by refusing to submit requested questions concerning work for which the District had already paid the Engineer. According to the District, the trial court erred in refusing to submit questions by which the District sought to establish that: (1) the Engineer failed to perform the contract in a good-and-workmanlike manner with respect to the projects for which the Engineer had been paid; (2) the payments previously made to the Engineer were made in reliance upon the Engineer's false representations that his plans substantially complied

with the contractual requirements; and (3) the value of plans and specifications, for which the Engineer had previously been paid by the District, was unreasonably low.

We reject these contentions. In its first opinion, the supreme court said, "We are unable to discern any real differences between the District's claim that Coulson's efforts were not good and workmanlike and did not meet the standards of reasonable engineering practice and its claim that Coulson was negligent in his performance of professional services." *Coulson II*, 734 S.W.2d at 651. The supreme court held that question number six, as submitted, resolved the question whether the Engineer was negligent in providing plans and specifications. It follows that question number six also resolved the question whether the Engineer performed in a good-and-workmanlike manner.

The District argues that its good-and-workmanlike-manner argument survives as a separate issue, despite the supreme court's pronouncement in *Coulson II*, because the District also filed a counterclaim against the Engineer to recover amounts already paid. We believe this distinction is unimportant. On appeal, the District's only assignment of error with respect to the counterclaim is that the trial court did not submit the requested questions. The District does not attack the jury's answers by legal- or factual-sufficiency points. In light of our holding that question number six properly presented the District's theory of the case, the issue whether the question represented the District's defense or its counterclaim is irrelevant. Question number six placed the burden of proof on the District and did not distinguish between plans for which the District had previously paid the Engineer and those for which the Engineer had received no payment. Therefore, we believe question number six resolved the question whether the Engineer performed in a good-and-workmanlike manner with respect to both the Engineer's claim against the District and the District's counterclaim against the Engineer.

■ Question number eight asked the jury whether the Engineer designed and

planned part of the water, sewer and drainage systems in excess of the reasonable needs of the District. It also asked whether the Engineer in bad faith misrepresented the need for these systems, and, if so, whether the District relied on these misrepresentations. The jury answered "No." We believe this question sufficiently presented the District's complaints that (1) it detrimentally relied on the Engineer's false representations that his plans substantially complied with the contract requirements and (2) the value of plans and specifications for which the Engineer had previously been paid by the District was unreasonably low. We overrule the District's twenty-ninth, thirtieth, and thirty-first points of error.

## SUFFICIENCY OF THE EVIDENCE

In its ninth point of error, the District contends the trial court erred in overruling the District's motion for new trial because the evidence is factually insufficient to support a finding that the Engineer substantially performed the contract. Question number one asked as follows:

> Do you find from a preponderance of the evidence that during the time in question [the Engineer] furnished the [District] with sufficient plans and specifications for construction of a water system, a sanitary sewer system and drainage for the needs of such District, and to secure approvals from appropriate governmental agencies, under the circumstances then existing?

In our first opinion in the cause, we held the trial court committed reversible error when it refused to supply in the charge a reasonable standard of skill and diligence that would have enabled the jury to determine whether the Engineer's plans and specifications met that standard and thus established his right to recover on the contract. *Coulson I,* 692 S.W.2d at 907. In that connection, the District had complained the charge omitted the controlling or ultimate question of fact: whether the plans and specifications were done "in a good and workmanlike manner" or "in accordance with appropriate standards of engineering practice." In reference to this complaint, we said, "The evidence adduced at trial would support a finding either way on the issue of whether the Engineer's plans and specifications were sufficient to meet either standard of skill and diligence suggested by the standard." *Id.* at 904. Nevertheless, the supreme court remanded the cause to this Court for the express purpose of determining whether the evidence was sufficient to support the jury's finding. *Coulson IV,* 781 S.W.2d at 597.

Contrary to the supreme court's view, we believe we did explicitly decide the evidence was factually sufficient to support the jury's affirmative answer to question number one, although we did not detail the evidence suggesting that conclusion. It is our understanding that we were not obliged to do so:

> In order that [the supreme court] may ... determine if a correct standard of review of factual insufficiency points has been utilized, courts of appeals, *when reversing on insufficiency grounds,* should, in their opinions, detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient.... Further, those courts, in their opinions, should state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict.

*Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986) (emphasis added). Because we were not "reversing on insufficiency grounds" the trial-court judgment, we concluded there was no necessity for discussing in detail the evidence pertinent to question number one.

■■■ To finally dispose of the issue, however, we will examine the District's factual-sufficiency point of error now. When reviewing a jury verdict to determine the factual sufficiency of the evidence, we must consider and weigh all the evidence, and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). To give content to the rather vague standard of "clearly wrong and unjust," we look to the practical suggestions

set out in W. St. John Garwood, *The Question of Insufficient Evidence on Appeal,* 30 Tex.L.Rev. 803 (1952): In reviewing a complaint that the evidence is insufficient to support a jury's verdict, the reviewing court must first ask whether it would reach the same verdict if it were the trier of fact. *Id.* at 811–12. If so, the verdict stands. If the answer is "No," the court should ask whether the jury must have been actuated by prejudice, sympathy, or some other incorrect motive, and, if so, why? *Id.*

 We cannot say that we would have reached a different result than did the jury, based on the evidence adduced at trial and shown in our record. Both the Engineer and the District produced expert testimony on the issue whether the plans and specifications sufficiently complied with the contract. The District witnesses testified that the Engineer's plans were so general as to be virtually worthless to potential bidders; they also testified that the Engineer improperly designed some of the facilities. The Engineer's witnesses testified that the Engineer's plans were adequate, and, in fact, were innovative and economical. It is within the province of the jury to determine the credibility of the witnesses and the weight to be given their testimony. *Rego Co. v. Brannon,* 682 S.W.2d 677, 680 (Tex.App.1984, writ ref'd n.r.e.). We hold the evidence is not factually insufficient.

In the District's supplemental brief in this Court, it acknowledges our statement from *Coulson I:* "The evidence adduced at trial would support a finding either way on the issue of whether the Engineer's plans and specifications were sufficient to meet either standard of skill and diligence suggested by the District." Therefore, the brief concedes, the District "will not now try to argue that the evidence was factually insufficient to support a finding that the Engineer met the proper standard of care."

Instead, the District argues under its insufficiency point that the quality and quantity of the evidence adduced will not allow a reasonable fact finder to conclude that the Engineer's plans and specifications were sufficient "for construction" of the planned structures, even though the evidence would permit the fact finder to conclude that the plans and specifications met a good-and-workmanlike standard or some other implied standard. The words "for construction" are taken from the language of question number one.

The District reasons as follows: Certain evidence in the record shows that the Engineer prepared his plans and specifications based upon a master plan that had been prepared by a firm of landscape architects. The master plan was subsequently changed, but the Engineer's plans and specifications were not changed to conform to these changes in the master plan. Therefore, any construction work could not be done according to the Engineer's plans and specifications alone, but only under the personal supervision of the Engineer in the construction phase as he adjusted the plans and specifications to meet the changes in the master plan. Thus, the evidence pertaining to question number one may be viewed as "sufficient" to support the jury's finding only on a theory that the District bound itself to employ the Engineer in the construction phase, if and when the bonds were sold. But this interpretation of the parties' contract is impermissible because such a contract would be against public policy. *See City of Big Spring v. Ward,* 140 Tex. 609, 169 S.W.2d 151, 154 (Tex. 1943). Consequently, one may interpret the parties' contract to mean only that they intended that the Engineer would supply plans and specifications that were *sufficient in themselves* to permit construction according to the master plan. The District argues that the evidence is overwhelming that this was not done, and in consequence the evidence is insufficient to permit the jury to find that the Engineer supplied the District with sufficient plans and specifications for construction.[2]

---

2. In its supplemental brief, the District complains the verdict is "against the great weight and preponderance of the evidence." Because the Engineer had the burden of obtaining jury findings in his favor and did so, the District must argue that the evidence was insufficient to support the verdict. The District would argue the evidence was against the great weight and

The argument is able but we must reject it under the previous opinions of the supreme court in this cause. In its first opinion, the supreme court held expressly that questions one and six "properly placed the respective burdens and fairly submitted the respective claims of [the Engineer] and the District." *Coulson II*, 734 S.W.2d at 652. We have quoted above the terms of Question Number One, submitting the Engineer's claim that he had performed his contract and was, therefore, entitled to payment. Question number six, on the other hand, asked the jury as follows: "Do you find from a preponderance of the evidence that [the Engineer] was negligent in failing, if it did, to furnish adequate plans and specifications to obtain reasonable competitive bid prices for the construction work ..., proximately causing higher costs for such construction to the District?" The jury answered, "No."

In holding that questions one and six fairly presented the parties' respective claims, the supreme court noted expressly that it agreed with the Engineer's argument "that once he proves compliance with the express requirements of the contract, he is entitled to a presumption that the work performed was 'good and workmanlike' and not negligently performed until the contrary is proven" by the District.

It appears to us that question number six presented the District's theory that the Engineer's plans and specifications did not comport with the contract because they would not, in and of themselves, provide a sufficient guide for construction. The evidence is undisputed that the Engineer complied with the contract in the sense, at least, of furnishing a set of plans and specifications as expressly required by the con-

tract. If they were insufficient in their particulars to permit construction thereunder, that is a matter lying within the scope of question number six. We overrule the District's ninth point of error.

## COMPUTATION OF COSTS

In points of error ten through fourteen, the District complains the trial court erred in allowing the Engineer to use 1979 estimates of competitive-bid costs in calculating his compensation. We sustain these points of error for the reasons set out in *Coulson III*, 771 S.W.2d at 153–54.[3]

## FEE PERCENTAGES

In points of error seventeen through twenty, the District complains the trial court erred by awarding the Engineer 100% of the fees specified in the contract because the District terminated the Engineer's employment before the projects were completed. We agree, and sustain the District's points of error seventeen through twenty for the reasons set out in *Coulson III*, 771 S.W.2d at 151–53. Both parties have assailed footnote two of *Coulson III*, however, arguing that it incorrectly limits the amount in controversy. We therefore do not confine the district court's determination of the amount in controversy to the amount stated in that footnote.

## HORSESHOE BAY WEST PAYMENTS

In its twenty-first point of error, the District contends the trial court erred in awarding fees to the Engineer for engineering services related to projects in Horseshoe Bay West. The District argues as follows: The contract, as amended, au-

preponderance of the evidence if it were complaining of the jury's failure to find a fact on which the District had the burden of proof. *See* William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex.L.Rev. 515, 519 (1991).

3. Because we have held that 1979 cost estimates were improper, we need not address the District's points of error fifteen and sixteen, which complain the evidence was insufficient to support the jury's answer to question number three. Should the supreme court disagree with our

disposition of points of error ten through fourteen, however, we hold in the alternative that the evidence was sufficient to support the jury's answer to question number three. Both parties presented evidence as to the reasonableness of the Engineer's estimates of costs. Considering all the evidence presented on the issue, we cannot say the jury's verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (Tex.1951).

thorized the Engineer to prepare plans and specifications for the area as it existed in 1973;[4] the District did not annex Horseshoe Bay West until 1976, however, so the contract did not provide for payment for services rendered by the Engineer for Horseshoe Bay West; because the Engineer sued only on the contract, and not in quantum meruit or implied contract, there were no pleadings to support a recovery for services rendered with respect to Horseshoe Bay West.

The original contract provided that the Engineer was "to handle all future engineering matters during the life of this contract ... for the entire District." The contract therefore contemplated that the Engineer might be required to provide services that were not defined in the original or amended contract. After the annexation of Horseshoe Bay West, it became a part of "the entire District" and came within the scope of the contract.

■■■ When parties to a contract make a valid modification of their contract and exchange consideration, the terms of the latest contract control. *INA v. Leonard,* 714 S.W.2d 414, 416 (Tex.App.1986, writ ref'd n.r.e.). The 1973 amendment provided that the Engineer would provide engineering services for the area described in an appendix to that agreement. It did not, however, provide that the area specified in the appendix constituted the *only* area subject to the contract. From the language in the 1973 amendment we cannot infer that the parties meant to nullify the broader language in the earlier contract.

We hold that the Engineer properly pleaded to recover fees for the Horseshoe Bay West plans and specifications. We

overrule the twenty-first point of error brought by the District.

## PREJUDGMENT INTEREST

In its twenty-second point of error, the District contends the trial court erred by awarding the Engineer prejudgment interest from September 23, 1979, to the date of trial. According to the parties' agreement, the Engineer was due payment on September 23, 1979, for certain elements of his design work. The District argues, however, that the contract amount was not ascertainable on September 23, 1979, and therefore prejudgment interest did not begin accruing until the Engineer provided an estimate of construction prices.[5] According to the District, interest did not begin to run on the estimate amounts until January 3, 1980, because the Engineer first provided cost estimates on December 3, 1979.[6] *See* Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (1987) (providing that a party is entitled to six-percent interest on contracts "ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable").

■■■ A sum is ascertainable when the *measure* of recovery, although not necessarily the *amount* of recovery, is fixed by conditions existing at the time of injury. *Commonwealth Lloyd's Ins. Co. v. Thomas,* 678 S.W.2d 278, 297 (Tex.App.1984, writ ref'd n.r.e.). The contract set the Engineer's fee as a percentage of construction costs. To the extent the parties knew what the costs were for completed work, we believe the District could compute the amounts due and payable from the contract percentage and the amount of construction costs. *See USX Corp. v. Union Pac. Re-*

---

4. According to the original contract, the Engineer was to prepare plans and specifications for projects within the initial 2335-acre area of the District. In 1972 the District annexed Horseshoe Bay South, enlarging the District to 3010 acres. In 1973 the parties amended the contract to authorize the Engineer to prepare plans and specifications for water, sewage and drainage facilities "to serve all of the area of the District described in the metes and bounds description" attached to the contract. The attachment described only the 3010-acre area.

5. We cannot determine from the District's brief whether it challenges the award of prejudgment interest on all sums awarded in the judgment, or whether it challenges only those sums awarded on the basis of the Engineer's estimates. We will address both possibilities.

6. The Engineer apparently provided in August 1979 an invoice demanding payment for his services; the invoice was based on 1973 cost estimates. When the District refused to pay, the Engineer submitted an invoice in December 1979 and based his estimates on 1979 prices.

*sources Co.*, 753 S.W.2d 845, 857 (Tex.App. 1988, no writ) (stating that the sum payable was ascertainable when the contract fixed a measure of damages as the prevailing price in cents per pound of cumene); *see also La Sara Grain Co. v. First Nat'l Bank*, 673 S.W.2d 558, 567 (Tex.1984) (stating that the requirement that a contract set out a sum payable is liberally construed). Therefore, we reject the District's complaint that the trial court erred in assessing interest from September 1979 on those amounts arising from completed construction work.

■ If there were other amounts that were not ascertainable at that time, we believe any error committed by the trial court was harmless. Since the District first presented this point of error to this Court, the supreme court has held that, when the amount of damages is not ascertainable from the face of the contract, the interest rate set out in article 5069–1.05 applies. *Perry Roofing Co. v. Olcott*, 744 S.W.2d 929, 930–31 (Tex.1988). *Perry Roofing* applies to all cases "in the judicial process" at the time it was decided, which means that the rule applies to this case. *Id.* at 931. When the contract does not specify a rate, the minimum interest rate is ten percent. Tex.Rev.Civ.Stat.Ann. art. 5069–1.05(2) (Supp.1992). Therefore, we believe the District suffered no harm: Either it accepts the six-percent rate assessed from September 23, 1979, or, based on its theory of unascertained sums, it is liable for at least ten-percent interest on those unascertained sums from January 3, 1980, until the date of judgment. We conclude the judgment awarded the Engineer the lesser of the two amounts. *See* Tex.R.App. P.Ann. 81(b) (Pamph.1992). We overrule the twenty-second point of error.

■ In its twenty-third point of error, the District argues that, by the terms of the contract, certain fees were not due and payable until five years after the Texas Water Commission approved the bonds. The Water Commission had not approved the bonds when the Engineer filed this suit and the five-year period had not elapsed by the time the trial court rendered judgment

in this case. Consequently, the District argues, the fees were not yet due and payable at the time of the judgment, and so the court below erred by awarding the Engineer prejudgment interest on those fees. We disagree with this reasoning.

The District breached the contract on April 12, 1979, by notifying the Engineer that it would not perform its contractual obligations. *See Mar–Len, Inc. v. Gorman–Rupp Co.*, 795 S.W.2d 880, 887 (Tex. App.1990, writ denied). This action constituted an anticipatory repudiation of the contract, thereby allowing the Engineer to elect among various remedies. *See Dunn v. Reliance Life & Accident Ins. Co.*, 405 S.W.2d 389, 391 (Tex.Civ.App.1966, writ ref'd n.r.e.). The Engineer did not sue immediately, however; instead, he chose to wait until after the first bond payment was due in September 1979. The District did not pay the Engineer at that time, and the Engineer sued in February 1980. In his suit, the Engineer prayed for recovery of those amounts due on September 20, 1979, as well as for recovery of other amounts due after that date. The District contends the Engineer had no right to seek recovery for those amounts which were not yet due under the contract.

When a party who is obligated by a contract to make future payments of money to another repudiates absolutely the obligation, without excuse, the obligee is entitled to maintain at once an action for damages for the entire breach. *Taylor Publishing Co. v. Systems Mktg., Inc.*, 686 S.W.2d 213, 217 (Tex.App.1984, writ ref'd n.r.e.); *see Universal Life & Accident Co. v. Sanders*, 129 Tex. 344, 102 S.W.2d 405, 406 (1937). The Engineer was therefore entitled to sue for the entire amount owed him, regardless of whether the five-year period had elapsed. The interest on that amount accrued from the date the District breached the contract, April 12, 1979. *See CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.*, 809 S.W.2d 577, 587 (Tex. App.1991, writ denied) (stating that prejudgment interest begins accruing on the date of the breach of contract). Because the trial court awarded prejudgment inter-

est from September 23, 1979, the District suffered no harm from the trial court's action. *See* Tex.R.App.P.Ann. 81(b) (Pamph.1992). We overrule the twenty-third point of error.

## ISSUANCE OF WRIT OF MANDAMUS

In its twenty-fourth, twenty-fifth, twenty-sixth and twenty-seventh points of error, the District contends the trial court erred by granting the Engineer a writ of mandamus ordering the District to take certain actions with respect to payment of the judgment. We sustain these points of error for the reasons set out in *Coulson III*, 771 S.W.2d at 154–57.

## CREATION FEE

In its twenty-eighth point of error, the District contends the trial court erred in failing to award the District a $120,000 offset because the contractual provisions allowing for the "creation fee" payments to the Engineer were void as a matter of law. We sustain this point of error for the reasons set out in *Coulson III*, 771 S.W.2d at 157–59. We also overrule the Engineer's first two cross-points of error, as we did in the earlier opinion. *See id.* at 159.

## RETENTION OF OVERPAYMENT

In its final point of error, the District complains the trial court erred in awarding the Engineer additional fees for the design of facilities known as "Chaney Change Order Number One for Horseshoe Bay South, Mobile Home Area." The District contends the evidence conclusively established that the Engineer had already been paid the design fees due for that area. The record reflects that the Engineer estimated the construction costs for the mobile-home area at $307,315. Chaney Construction Company submitted the low bid of $260,300.58 to construct facilities in the area. The District paid the Engineer a fee based on a percentage of the higher amount, and now asserts that it should be credited with the payment.

The Engineer responds with two arguments. First, he justifies the fee he received by arguing that it represented compensation for the District's use of his plans to construct facilities added by change order to the contract.[7] We do not believe this argument is responsive. The District does not contend the change order was unnecessary and that it should not have to pay for the plans prepared for the area specified in the change order. We understand the District to argue that assessing an additional fee was error because the trial court should have offset the fee attributable to the change order by the amount the Engineer had been overpaid for his original plans.

The Engineer's second response is the District deleted certain items from the plans before submitting them for bids from contractors, thereby insuring that the bid amount would be lower than the estimated amount. The Engineer argues that he is entitled to receive compensation for designing facilities, even if the District deleted items from the plans before or during construction.

The contract provided: "The cost of construction for application on fee percentage shall be based upon the total competitive bid cost. If competitive bids are not obtained, then the ... Engineer's estimate of reasonable competitive construction bid prices shall be used to determine the construction cost and the applicable percentage fee." The District obtained a competitive bid for the amount of $260,300.58. Thus, the issue presented is whether the Engineer can recover based on his estimate of costs, instead of on competitive bid costs, because the District unilaterally deleted certain items from the Engineer's plans before submitting the plans to prospective bidders.

We believe that in absence of a rule of law or a contract provision forbidding the

7. The record reflects that the District and Chaney Construction Company entered into an agreement whereby Chaney was to "commence and complete the construction of certain improvements described as follows: Off–Site Water Distribution System to serve Horseshoe Bay West." The agreement also provided that Chaney was to follow the plans and specifications prepared by "Coulson & Associates Engineers, Inc."

District from deleting items from the plans and then accepting bids based on the altered plans, the Engineer was contractually limited to a fee based on a percentage of the bid amount. The Engineer cites no authority for his assertion that he was entitled to a percentage based on his estimate regardless of the District's alteration of the plans, and we have found none.

We hold that the trial court erred in failing to offset the amount due the Engineer for the Chaney change order number one by the amount overpaid to him for the mobile-home area. We sustain the District's thirty-second point of error.

## ATTORNEY'S FEES

In response to question number five, the jury found the Engineer's reasonable attorney's fees were $42,000 for the trial-court proceedings, $25,000 if the case was appealed to the court of appeals, and an additional $8000 if the case was appealed to the supreme court. On the District's motion, the trial court set aside these findings as immaterial because it determined that the District was a public corporation and therefore not subject to liability for attorney's fees. The Engineer complains in his third cross-point that the trial court erred by failing to award him attorney's fees.

■ The District responds that it is not liable for the Engineer's attorney's fees because no statute provides for recovery of attorney's fees against the District.[8] Attorney's fees are recoverable only when there is an explicit contractual or statutory basis for recovery; the "necessary statutory basis for an award of attorney's fees may not be supplied by implication." *Knebel v. Capital Nat'l Bank,* 518 S.W.2d 795, 804 (Tex.1974); *see also Texas Dep't of Human Servs. v. Methodist Retirement Servs., Inc.,* 763 S.W.2d 613, 614 (Tex.App. 1989, no writ).

At the time of the trial in this cause, a party's entitlement to recovery of attorney's fees was governed by article 2226, which provided that "[a]ny *person, corporation, partnership, or other legal entity* having a valid claim against a *person or corporation* for ... suits founded on oral or written contracts ... may, if represented by an attorney, ... recover, in addition to his claim and costs, a reasonable amount as attorney's fees." 1979 Tex.Gen.Laws, ch. 314, § 1, at 718 (Tex.Rev.Civ.Stat.Ann. art. 2226, since repealed and codified as amended at Tex.Civ.Prac. & Rem.Code Ann. § 38.001 (1986)) (emphasis added). The legislature also suggested that the statute be liberally construed. *Id.* The Engineer contends a liberal construction of article 2226 dictates that he receive attorney's fees.

Article 2226 granted four classes of litigants a right to *recover* attorney's fees: persons, corporations, partnerships, and "other legal entities." Only two of these classes were subject to *liability* for attorney's fees—persons and corporations. The District argues that if the legislature intended to bring governmental units within the attorney's fees statute at all, it did so by adding the phrase "other legal entities" instead of including governmental units within the term "persons" or "corporations." This interpretation, of course, allows governmental units to recover attorney's fees under article 2226 without a corresponding liability for attorney's fees under that statute.

The Engineer contends the foregoing construction of the statute is (1) incorrect because the legislature intended to include a municipal utility district within the definition of "person" or "corporation," or (2) unconstitutional under the Fourteenth Amendment because equality must exist between the class entitled to recover and the class subject to recovery. *See U.S.*

8. The District cannot avoid liability for attorney's fees solely on the basis of claimed governmental immunity because in its pleadings the District did not set forth governmental immunity as an affirmative defense. *See Davis v. City of San Antonio,* 752 S.W.2d 518, 519 (Tex.1988); *County of El Paso v. Boy's Concessions, Inc.,* 772

S.W.2d 291, 293 (Tex.App.1989, no writ). Even if the District waived any possible immunity defense it might have had, however, the Engineer still may not recover attorney's fees unless a statute so provides. *State v. Bodisch,* 775 S.W.2d 73, 75–76 (Tex.App.1989, writ denied).

Const. amend. XIV, § 2. We will address each of these contentions.

### Status of Municipal Utility District

The Engineer is entitled to recover attorney's fees under article 2226 if the District falls within the definition of "person" or "corporation." We hold it does not.

### Meaning of "Person"

■ First, we do not believe the word "person" as used in article 2226 includes a governmental unit. The successor to article 2226 is section 38.001 of the Civil Practice and Remedies Code, which provides that "[a] *person* may recover reasonable attorney's fees from *an individual or corporation....*" Tex.Civ.Prac. & Rem.Code Ann. § 38.001 (1988) (emphasis added). Although the codification of the attorney's-fees statute changed the class subject to recovery of attorney's fees from "a person or corporation" to "an individual or corporation," the Act codifying the attorney's fees statute was "intended as a recodification only, and no substantive change in the law" was intended. 1985 Tex.Gen.Laws, ch. 959, § 10, at 3322.[9] Therefore, we conclude cases construing section 38.001 apply as well to article 2226.

Construing section 38.001, this Court has held that neither the state nor a subdivision of the state is an "individual" subject to liability for attorney's fees. *State v. Bodisch,* 775 S.W.2d 73, 75 (Tex.App.1989, writ denied). Because "person" in article 2226 corresponds to "individual" in section 38.001, we conclude that under *Bodisch* a governmental unit is not a "person" under article 2226. Another court of appeals has held that a governmental unit is not a "person" within the meaning of article 2226. *See Commissioners Court v. Rodgers,* 691 S.W.2d 753, 757 (Tex.App.1985, no writ) ("A liberal interpretation of [article

2226] does not authorize us to expand the meaning of 'person' obviously used in [the] article in accordance with its commonly understood meaning of 'an individual human being' to include a county or commissioners court.") (footnote omitted).

We recognize that one court of appeals has held a governmental entity is a "person" within the meaning of article 2226 and is therefore liable for attorney's fees in a breach-of-contract action. *Wickersham Ford, Inc. v. Orange County,* 701 S.W.2d 344, 349 (Tex.App.1985, no writ). We decline to follow *Wickersham Ford* because we believe the reasoning of the court of appeals is flawed. The court ignored the plain language of the statute when it held that a political subdivision of the state should not be able to claim the benefits of article 2226 without also exposing itself to liability for attorney's fees. *Wickersham Ford,* 701 S.W.2d at 348. The statute, which was identical to the version being applied in the present case, explicitly created dissimilar classes: It allowed persons, corporations, partnerships and other legal entities to recover attorney's fees, but exposed only persons and corporations to liability for attorney's fees. If the view adopted by the *Wickersham Ford* court were correct, "partnerships and other legal entities" would be meaningless. We may not adopt such a construction. *See Ex parte Pruitt,* 551 S.W.2d 706, 709 (Tex. 1977) ("Statutes should be read as a whole and construed to give meaning and purpose to every part."). Moreover, the *Wickersham Ford* court misread the primary case it relied on, *Garwood Irrigation Co. v. Lower Colorado River Authority,* 387 S.W.2d 746 (Tex.Civ.App.1965, writ ref'd n.r.e.). In *Garwood Irrigation,* the governmental subdivision was the party seeking to recover attorney's fees, not the party resisting recovery. Therefore, we de-

---

**9.** Section 311.005 of the Code Construction Act, which does not apply to article 2226, *see* Tex. Gov't Code Ann. § 311.002 (1988), defines "person" to include, among other entities, a "government or governmental subdivision or agency." *Id.* § 311.005. The revisor's note to section 38.-001, however, says that "[section 38.001] does not use 'person' in the reference to an opposing

party because the Code Construction Act definition of 'person' is broader than the source law meaning of the term." Tex.Civ.Prac. & Rem. Code Ann. § 38.001, revisor's note (2) (1988). This suggests that "person," as used in the source law, article 2226, did not include governmental units.

cline to follow the reasoning in *Wickersham Ford.*

### Meaning of "Corporation"

█ The Engineer argues that, because article 2226 imposes liability for attorney's fees on a municipal corporation, the trial court erred by denying him attorney's fees. The Engineer's argument assumes, of course, that the District is a municipal corporation; we believe this is a doubtful assumption.[10] We need not decide explicitly whether the District is a municipal corporation outside the context of governmental immunity, however, because we do not believe the Engineer is entitled to recover attorney's fees even if we indulge his assumption that the District is a municipal corporation.

The Engineer can recover attorney's fees under article 2226 only if the legislature intended to include in the word "corporation" a governmental unit performing governmental functions.[11] *See Gates v. City of Dallas,* 704 S.W.2d 737, 740 (Tex.1986). Without a clear indication of legislative intent that the word "corporation" include

the District, the Engineer's argument must fail. *See Knebel,* 518 S.W.2d at 804.

To determine the legislature's intended meaning of the word "corporation," we look to the law existing when the disputed version of the statute was enacted. In the context of an antitrust statute, the supreme court stated in 1942 that "as a general rule the word 'corporation' is construed to apply only to private corporations and does not include municipal corporations, unless the statute expressly so provides." *State v. Central Power & Light Co.,* 139 Tex. 51, 161 S.W.2d 766, 768 (Tex. 1942). Subsequent decisions applied this rule to article 2226. *See, e.g., Willis v. City of Lubbock,* 385 S.W.2d 617, 618 (Tex. Civ.App.1965, writ ref'd n.r.e.); *City of Houston v. L.J. Fuller, Inc.,* 311 S.W.2d 285, 291 (Tex.Civ.App.1958, no writ). The legislature is presumed to have been aware of this judicial construction of the word "corporation" when it *reenacted* article 2226 in 1979. *See McBride v. Clayton,* 140 Tex. 71, 166 S.W.2d 125, 128 (1942) (presuming that in using a particular term the legislature intended it to mean what courts had theretofore said it meant). We infer,

---

**10.** Considerable controversy exists regarding exactly what constitutes a "municipal corporation." *See generally* George D. Braden, *The Constitution of the State of Texas: An Annotated and Comparative Analysis* 672–74 (1977) (discussing the confusion arising from the imprecise use of "municipal corporation" in article XI of the Texas Constitution). The term "municipal corporation" has great significance in the field of governmental immunity because of the supreme court's landmark 1884 decision in *City of Galveston v. Posnainsky,* 62 Tex. 118 (1884). *Posnainsky* concluded that home-rule municipalities were not immune from liability when they performed proprietary functions. *Id.* at 127–28. This Court, accordingly, has stated that "[i]n the context of governmental immunity, we believe that the word 'municipal corporation' is a term of art properly limited to municipalities." *Dillard v. Austin Indep. Sch. Dist.,* 806 S.W.2d 589, 595 n. 7 (Tex.App.1991, writ denied).

The supreme court has stated that conservation and reclamation districts such as the District "are not classed with municipal corporations, but are held to be political subdivisions of the State, performing governmental functions, and standing upon the same footing as counties and other political subdivisions established by law." *Willacy County Water Control & Improvement Dist. No. 1 v. Abendroth,* 142 Tex. 320, 177

S.W.2d 936, 937 (Tex.1944). The supreme court adhered to this view in the face of a strong, scholarly dissent in *Bennett v. Brown County Water Improvement Dist. No. 1,* 153 Tex. 599, 272 S.W.2d 498, 503 (Tex.1954).

Exactly what constitutes a "municipal corporation" for nongovernmental immunity purposes continues to vex the courts. If the District is not a municipal corporation, however, it is clear that the Engineer cannot recover attorney's fees because no statutory authority would exist for such an award. *See Knebel,* 518 S.W.2d at 795.

**11.** Although governmental immunity is important as a framework in which to ascertain legislative intent, it is not a valid basis for deciding this case. Rather, the dispositive issue is whether the legislature provided statutory authority for the Engineer to recover attorney's fees. We therefore disagree with the analysis in *Hill v. Ector County,* 825 S.W.2d 180 (Tex.App.1992, writ granted). In *Hill,* the court of appeals held that the county was liable for attorney's fees because it failed to plead governmental immunity as a defense. *Id.* at 182. We believe this misstates the issue; a county need not plead the governmental-immunity defense if no statute affirmatively provides authority for recovery of attorney's fees.

then, that the legislature intended "corporation" to apply only to private corporations.

In 1986 the supreme court analyzed article 2226 and expanded the meaning of the word "corporation" to include a municipality. *See Gates*, 704 S.W.2d at 740.[12] The court, however, based its decision on the home-rule municipality's broad powers of self-government, factors not applicable here. The District is a conservation and reclamation district organized and existing under authority of article XVI, section 59 of the Texas Constitution and created pursuant to the provisions of chapter 54 of the Water Code; therefore, it constitutes a political subdivision of the state and operates as a governmental agency performing exclusively governmental functions. *See Clear Lake City Water Auth. v. Clear Lake Util. Co.*, 549 S.W.2d 385, 391 (Tex. 1977); *Dillard v. Austin Indep. Sch. Dist.*, 806 S.W.2d 589, 596 (Tex.App.1991, writ denied) (only municipalities possess both governmental and proprietary functions); *see also* Tex.Water Code Ann. § 54.119(a) (1972); *cf. Bennett v. Brown County Water Improvement District No. 1*, 153 Tex. 599, 272 S.W.2d 498, 502 (Tex.1954) (applying the law governing counties, rather than cities, to water improvement district). Because the District is not a municipality performing proprietary functions, *Gates* does not control the case at bar.

By negative implication, however, *Gates* leads to the conclusion that article 2226 does not impose liability for attorney's fees on a governmental unit performing governmental functions. The court stated that article 2226 "places no limitation on the broad powers of self-government of a home rule municipal corporation when acting in a proprietary capacity." *Gates*, 704 S.W.2d at 740. This implies that a governmental subdivision performing governmental functions is not subject to the same analysis. Because *Gates* provides no authority for the assessment of attorney's fees against a governmental subdivision performing governmental functions and because the statute provides no explicit authority for the assessment of attorney's fees, we cannot conclude the legislature intended the word "corporation" in article 2226 to include the District. *See City of Houston v. Lyons Realty, Ltd.*, 710 S.W.2d 625, 630 (Tex.App. 1986, no writ) (denying attorney's fees to party with claim against municipal utility district because district engaged in governmental rather than proprietary functions).

We recognize that the court in *Gates* discounted the broad rule of *Central Power*, stating that a court seeking to ascertain legislative intent should instead consider "the old law, the evil, and the remedy." *Gates*, 704 S.W.2d at 740 (quoting Tex. Gov't Code Ann. § 312.005 (1988)). In *Gates*, however, the court applied the provisions of article 2226 to the municipality just as if it had been a private citizen. *Id.* at 739. Because the City of Dallas in *Gates* was performing a proprietary function and therefore stood on the same footing as a private citizen, the court justified its decision with the same policy rationale it would apply to private citizens—to encourage contracting parties to pay their debts and to discourage litigation. *Id.* That policy has never applied to a governmental unit performing governmental functions. Even when a governmental unit performing governmental functions would clearly be liable if it were a private citizen, the claimant must still point to a statute waiving immunity from suit or obtain from the legislature consent to suit and to liability. Therefore, although the evil is the same, the remedy differs when the party subject to recovery is a governmental unit performing governmental functions.

Moreover, we find nothing in the "old law" to support recovery of attorney's fees against a governmental unit performing governmental functions. When the legislature first enacted an attorney's fee statute

---

12. In 1987 the legislature statutorily overruled *Gates* by providing that a municipality may not be considered a corporation under a statute unless that statute expressly so provides. *See* 1987 Tex.Gen.Laws, ch. 342, § 1, at 1761 (Tex. Rev.Civ.Stat.Ann. art. 1269j–13, since repealed and codified as amended at Tex.Loc.Gov't Code Ann. § 5.904 (Supp.1992)).

in 1909,[13] governmental units performing governmental functions enjoyed immunity from suit and from liability for actual damages, as they do today. *See City of Galveston v. Posnainsky,* 62 Tex. 118, 127–28 (1884). It follows that, if a governmental entity enjoyed immunity from suit, it enjoyed immunity from liability for attorney's fees as well. This remained the state of the law in 1979, when the legislature enacted the version of article 2226 at issue here. *See* 1979 Tex.Gen.Laws, ch. 314, § 1, at 718 (since repealed and codified as amended at Tex.Civ.Prac. & Rem.Code Ann. § 38.001 (1986)). We find nothing in the statute or the cases interpreting the statute to suggest that the legislature intended to change the state of the law to hold a governmental unit performing governmental functions liable for attorney's fees, and we are not free to impute such an intent.[14] *See Knebel,* 518 S.W.2d at 804. Nor does the legislature's directive that the statute be liberally construed dictate a broader construction. *See First City Bank—Farmers Branch, Texas v. Guex,* 677 S.W.2d 25, 30 (Tex.1984) ("[A]n award of attorney's fees may not be supplied by implication but must be provided for by the express terms of the statute in question.").

This Court held in *Bodisch* that neither the State nor an agency of the State is a corporation as that term is used in section 38.001. *Bodisch,* 775 S.W.2d at 75; *see also Washington v. Walker County,* 708 S.W.2d 493, 497 (Tex.App.1986, writ ref'd n.r.e.) (holding that a county and its officials, "in their official capacities, are not a 'corporation' under the ordinary meaning of the term"). We see no reason to apply a different rule in cases applying article 2226.

We hold the District is not a corporation within the meaning of article 2226; therefore, the necessary statutory authority to recover attorney's fees against the District is lacking. *See Bodisch,* 775 S.W.2d at 75.

## Constitutional Analysis

The Engineer also argues that article 2226 violates the equal-protection guarantee of the Fourteenth Amendment if it allows a governmental unit to recover attorney's fees from an private party, while forbidding a private party to recover attorney's fees from the governmental unit. In effect, the Engineer contends the class entitled to recover attorney's fees must be identical to the class subject to liability for attorney's fees, or an unconstitutional classification results. To avoid such a classification, the Engineer argues, we should construe article 2226 in such a way as to infer a legislative intent to include a governmental unit within the meaning of "person" or "corporation."

■ A careful reading of article 2226 indicates that the legislature could not have intended that the class entitled to recover be identical to the class subject to recovery. The class entitled to recover included "persons, corporations, partnerships or other legal entities." The class subject to liability consisted of only persons and corporations. If these classes were meant to be identical, "partnerships or other legal entities" would be superfluous. A court must give effect to all the words of a statute and not treat any statutory language as surplusage. *Chevron Corp. v. Redmon,* 745 S.W.2d 314, 316 (Tex.1987). We conclude the legislature did not intend for the classes to be identical.

■ The next question, then, is whether article 2226 is unconstitutional as written. The Engineer does not contend that any fundamental interest or suspect class is involved. Therefore, the applicable standard is whether the statutory classification and different treatment bear a "rational relationship" to a legitimate state interest which the statute was designed to further. *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). We may not overturn the stat-

---

13. *See* 1909 Tex.Gen.Laws, ch. 47, § 1, at 93 (repealed and codified as amended at Tex.Rev.Civ.Stat.Ann. art. 2226, since repealed and codified as amended at Tex.Civ.Prac. & Rem.Code Ann. 38.001 (Supp.1992)).

14. *Gates* is not inconsistent with such a construction because a municipality performing a proprietary function has no immunity.

ute unless "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude the legislature's actions were irrational." *Massachusetts Indem. & Life Ins. Co. v. Texas State Bd. of Ins.*, 685 S.W.2d 104, 110 (Tex.App.1985, no writ) (quoting *Vance v. Bradley*, 440 U.S. 93, 108, 99 S.Ct. 939, 948, 59 L.Ed.2d 171 (1979)).

The Engineer argues, "There is no conceivable rational basis to support allowance of attorney's fees to a successful governmental entity pursuing a contract claim yet prevent recovery against such an entity in favor of others on identical claims." We disagree. We find a rational basis for the legislature's creation of incongruent classes in article 2226. Presumably, the legislature intended to preserve the funds of the state. *See Tarrant County Hosp. Dist. v. Ray*, 712 S.W.2d 271, 273 (Tex.App. 1986, writ ref'd n.r.e.). Were this not a legitimate state interest, the entire doctrine of governmental immunity would be constitutionally invalid.

Rejecting an equal-protection attack on the predecessor statute to article 2226, the United States Supreme Court said:

> [T]he 14th Amendment does not require that state laws shall be perfect; and we cannot judicially denounce this act as based upon arbitrary distinctions, in view of the wide discretion that must necessarily reside in a state legislature about resorting to classification when establishing regulations for the welfare of those for whom they legislate.

*Missouri, K. & T. Ry. v. Cade*, 233 U.S. 642, 650, 34 S.Ct. 678, 680, 58 L.Ed. 1135 (1914); *see also McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961) (stating that state legislatures are presumed to have acted within their constitutional power even though their laws create some unequal distinctions). We conclude article 2226 does not violate the Fourteenth Amendment. We overrule the Engineer's third cross-point.

### DISPOSITION OF THE CASE

We reverse the judgment and remand this cause to the trial court for further proceedings in accordance with this opinion. On remand, the trial court should determine the amount of damages due the Engineer in light of our holdings that:

1. the Engineer is entitled to compensation based on prices estimated by the Engineer at the time he submitted plans for approval, not on 1979 price estimates;

2. the Engineer is entitled only to the design-phase fees, not the construction-phase fees;

3. the Engineer is entitled to recover for Horseshoe Bay West plans and specifications;

4. the District is entitled to an offset for payments previously made to the Engineer as part of the "creation fee";

5. the District is entitled to an offset for overpayments to the Engineer for plans for the Horseshoe Bay South mobile-home area;

6. the Engineer is entitled to prejudgment interest accrued from September 1979; and

7. the Engineer is not entitled to attorney's fees.