United States Court of Appeals,

Fifth Circuit.

No. 96-50100.

TRAVIS COUNTY, TEXAS, Plaintiff-Counter Defendant-Appellee-Cross-Appellant,

v.

RYLANDER INVESTMENT CO., INC., Defendant-Counter Claimant-Appellant-Cross-Appellee.

March 25, 1997.

Appeals from the United States District Court for the Western District of Texas.

Before REYNALDO G. GARZA, SMITH and EMILIO M. GARZA, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

While the parties to this case have presented us with several questions to resolve in this appeal, only one merits extended discussion: Does Texas law require an entity which brokers real estate on behalf of a governmental body to obtain a real estate license. We answer this question in the negative.

This case concerns a contract ("the Agreement") between Travis County, Texas ("County") and Hill Rylander ("Rylander") for the construction and operation of a farmers market ("the Market") in Austin for a 20-year term. Rylander agreed to exercise his best efforts and professional skill in managing the Market so as to provide the County with an economic return and to "provide a quality service at an affordable price for the public in the marketing of produce by local growers and producers, and an agricultural exhibit center, with related operations being a magnet

1

to attract citizens and tourists on a year-round basis."  One of his chief tasks involved leasing space at the Market to the vendors who are, ultimately, the Market's *raisons d'être.*  Rylander's compensation was tied to the Market's performance which, in turn, depended upon there being vendors at the Market whose wares were desired by the shopping public in Travis County.  These lease agreements were not final, however, until the County gave its approval to them.

For a variety of reasons, the parties' relationship soured to the point of litigation.  The County sued Rylander Investment Company ("RIC"), which had been assigned all of Rylander's rights and obligations under the Agreement, in state court in July 1994 alleging a number of claims and sought damages as well as rescission of the contract.  It based its rescission argument on a claim that RIC failed to obtain a real estate license required under both state law and the Agreement.  Its failure to obtain this license, the County asserted, resulted in RIC's breach of certain fiduciary obligations it owed the County.  RIC removed the case to federal court[1] and counter-claimed for damages it alleged to have suffered from, *inter alia,* the County's refusal to approve negotiated leases.  The parties consented to the jurisdiction of a magistrate judge and a two-week bench trial commenced.

The magistrate judge entered an opinion and order on December

---

[1]Subject-matter jurisdiction was premised on an Americans with Disabilities Act claim brought by Travis County.  The court dismissed this claim before trial but, "[d]ue to the advanced posture of the case," elected to exercise supplemental jurisdiction over the remaining claims.

13, 1995. With respect to the issue of the real estate license, the magistrate determined, after hearing the testimony of an attorney with the Texas Real Estate Commission, that RIC was required to be licensed under state law. He excused RIC's noncompliance with the Act, however, finding that its use of its lawyer[2] demonstrated good-faith compliance with the Act. Yet he also determined that the Agreement required that RIC itself become licensed and so ordered it to obtain this license. At the same time he forgave the County's refusal to approve leases because of RIC's lack of a license. Both parties appeal.

The issue of real estate licensure requires us to engage in an interpretation of the Texas Real Estate License Act (RELA), Tex. Rev. Civil Stat. Ann. art. 6573a. The County asserts that both the Agreement and the RELA required RIC to obtain a real estate license in connection with its duties in leasing space at the Market. It is undisputed that RIC did not possess a license. Rylander obtained one after the Agreement was signed but it subsequently lapsed; he took the test again in 1993 but failed and currently does not have one. RIC asserts that the RELA does not require licensure because all of its real estate brokering was done on behalf of Travis County, a local governmental body. The County disputes this reading of the RELA, but argues that even if RIC was not required by Texas law to become licensed, the Agreement itself requires a license. We review de novo both the lower court's

---

[2]Lawyers are not required to become licensed real estate brokers under Texas law.

3

interpretation of the Agreement and its conclusions as to the requirements of state law.

RIC first states that the magistrate judge erred in finding that the Agreement required anything above and beyond compliance with state law. The magistrate judge's opinion does not indicate upon which section of the Agreement he relied in making this determination. The only section we find that might bear upon this situation is § 7(d), which requires RIC

> [t]o comply with all licensing requirements in order to allow [RIC] to serve in the capacity provided herein, and to comply with all building codes, zoning, and licensing requirements, and other requirements of federal, state, county, or municipal authorities having jurisdiction over the Premises, with the exception that [RIC] will not have to comply with any requirements which are not applicable to the Owner.

We find that this section does no more than require adherence to applicable law. In light of this finding, we must now determine what the applicable law—the RELA—requires.

The RELA was enacted in an attempt to eliminate or reduce fraud on the public caused by unlicensed, unqualified, or unscrupulous persons dealing in real estate. *See Henry S. Miller Co. v. Treo Enters.*, 585 S.W.2d 674, 675-76 (Tex.1979). Among its provisions is a requirement that certain individuals or entities obtain a license from the Texas Real Estate Commission before engaging in real estate transactions. It requires licensure for "*a person, who for another person* and for a fee, commission, or other valuable consideration, or with the intention or in the expectation or on the promise of receiving or collecting a fee, commission, or other valuable consideration *from another person* " sells, leases,

4

purchases, rents, leases real estate, or negotiates such activities, and other related activities. RELA § 2(2) (emphasis added). The RELA defines a "person" as "an individual, a limited liability company, or a corporation, foreign or domestic." RELA § 2(5). RIC concedes that it is a "person," but argues that the County is not a "person," thereby exempting it from the license requirements of the RELA.

There exists no reported decision of a Texas court interpreting the RELA with respect to this question. There do exist, however, numerous decisions which set forth the rules of statutory construction in Texas as well as decisions interpreting the term "corporation" in other contexts. It is based upon these precedents and our own reading of the RELA that we conclude that RIC is exempt from its licensing requirement.

The RELA applies only to a person who represents another person. If the County is not included within RELA's definition of "person," RIC is not required to become licensed. This follows from a general rule of statutory construction, followed in Texas, that presumes that every word in a statute is used for a purpose and every word excluded is excluded for a purpose. *Cameron v. Terrell & Garrett,* 618 S.W.2d 535, 540 (Tex.1981). The plain language of RELA's definition of person does not seem to permit the inclusion of a local government body like Travis County. The County is obviously not an individual or a limited liability company and our reading of Texas case law leads us to conclude that it cannot be considered a corporation.

5

Texas courts have held in other contexts that the term "corporation" does not include governmental bodies. *See State v. Central Power & Light Co.,* 139 Tex. 51, 161 S.W.2d 766, 768 (1942) (antitrust case holding that "as a general rule the word "corporation' is construed to apply only to private corporations and does not include municipal corporations, unless the statute expressly so provides"); *Harris Mun. Util. Dist. v. Mitchell,* 915 S.W.2d 859, 866 (Tex.App.—Houston [1st Dist.] 1995, writ denied) (for purposes of attorney's fees statute, governmental unit not a "corporation"); *Base-Seal, Inc. v. Jefferson County,* 901 S.W.2d 783, 787 (Tex.App.—Beaumont 1995, writ denied) (same); *Lake LBJ Mun. Util. Dist. v. Coulson,* 839 S.W.2d 880, 892-93 (Tex.App.—Austin 1992, no writ) (same); *Kerrville HRH v. City of Kerrville,* 803 S.W.2d 377, 381-82 (Tex.App.—San Antonio 1990, writ denied) (holding that definition of "person" in Deceptive Trade Practices Act, defined as "an individual, partnership, corporation, association, or other group, however organized," does not include local governmental bodies). We defer to this interpretation and hold that the County was not a "person" for purposes of RELA. Accordingly, § 2(2) does not require RIC to obtain a real estate license.

In response, the County first argues that, notwithstanding the foregoing discussion of § 2, § 4 of the RELA mandates licensure for RIC. Section 4 provides as follows:

> A person who, directly or indirectly for another, with the intention or on the promise of receiving any valuable consideration, offers, attempts, or agrees to perform, or performs, a single act defined in Subdivisions 2 and 3,

Section 2 of this Act, whether as a part of a transaction, or as an entire transaction, is deemed to be acting as a real estate broker or salesman within the meaning of this Act. The commission of a single such act by a person required to be licensed under this Act and not so licensed shall constitute a violation of this Act.

RELA § 4. As RIC correctly argues, this section does not impose a duty upon one who is already disqualified under the terms of §§ 2(2) and 2(3). As discussed above, § 2(2) does not pick up RIC and neither does § 2(3). Accordingly, § 4 does not require a license.

The County also argues that there is already a specific exception in the RELA for public officials (§ 3(3)), which exception RIC cannot utilize. While an accurate reading of the statute, this does nothing to change our interpretation. The fact that there is already a government-related exception from the license requirement does not require an interpretation of the RELA which pretends to ignore the language in § 2(2).

The remaining issues raised by the parties do not merit extended discussion. Our review of the record satisfies us that the magistrate judge did not err in finding that the County fulfilled its obligations under the contract with respect to the initial construction upgrades, but not because it spent what it was required to spend. We agree with the magistrate judge's conclusions that income received by RIC from the farmers' stall fees constitutes "gross rental income," that RIC is not entitled to damages from the County's interference with the Pumpkin Festival, that the Agreement requires RIC to obtain fire and liability insurance, that the amendment to the Agreement is supported by consideration, and that RIC has no claim under 42 U.S.C. § 1983.

7

We find no abuse of discretion in the magistrate judge's refusal to designate RIC as the prevailing party for purposes of an award of attorney's fees. We find that RIC did not breach any fiduciary duty it may have owed to the County and refuse to order rescission of the Agreement. We agree with the magistrate judge that the Agreement does not prevent RIC from conducting festivals at the Market for profit.

We reverse the magistrate judge's order requiring RIC to obtain a real estate license. As a consequence, we also reverse that part of its order denying RIC's claim relating to the County's refusal to approve leases submitted to it. The magistrate judge found the County's refusal to approve did not amount to a breach of the Agreement because it found that the County acted upon "a reasonable (and ultimately justified) belief that RIC needed to obtain a real estate license." Because we have found the County's position with respect to the requirement of licensure to be erroneous under both the Agreement and state law, we remand the case for reconsideration of this aspect of RIC's breach of contract claim.

AFFIRMED in part, REVERSED in part, and REMANDED with instructions.

8