Opinion issued September 10, 2004












In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-03-00557-CV
____________

THE STATE OF TEXAS, Appellant

V.

THE CITY OF GALVESTON, Appellee
 

 
 
On Appeal from the 212th District Court
Galveston, County, Texas
Trial Court Cause No. 03CV0018
 

 
 
DISSENTING OPINION
          The majority holds that a municipality enjoys no immunity from a claim by a
statewide governmental agency for damages for negligence in the performance of a
governmental function, here the installation, maintenance, and upkeep of a water line
that erupted, causing damage to a state highway. I respectfully dissent.
          Sovereign and Governmental Immunity
          Since 1884, municipalities have enjoyed immunity from suit for tort claims
when performing governmental functions unless that immunity is expressly waived
by statute. See City of Galveston v. Posnainsky, 62 Tex. 118, 133 (1884) (first
recognizing municipality’s immunity to suit arising from performance of
governmental functions). Governmental functions, as defined by the Texas Tort
Claims Act (TTCA), are “those functions that are enjoined on a municipality by law
and are given it by the state as part of the state’s sovereignty, to be exercised by the
municipality in the interest of the general public.” Tex. Civ. Prac. & Rem. Code
Ann. § 101.0215(a) (Vernon 2004). The immunity enjoyed by a municipality in the
exercise of its governmental functions is called “governmental immunity,” as is the
immunity of all “political subdivisions of the State, including counties, cities, and
school districts,” as opposed to “sovereign immunity,” which is enjoyed by the State
itself and “various divisions of state government, including agencies, boards,
hospitals, and universities.” Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692,
694 n.3 (Tex. 2003).


 Both sovereign and governmental immunity provide immunity
to both suit and liability. See Catalina Dev., Inc. v. County of El Paso, 121 S.W.3d
704, 705 (Tex. 2003). 
          It is undisputed that, in this case, the City was performing a governmental
function in committing the acts of negligence giving rise to the State’s claims and that
normally the TTCA recognizes the immunity of municipalities from such claims.


 
It is further undisputed that no other applicable statute waives the municipality’s
immunity from suit. Thus any grounds for the City’s amenability to suit and liability
in this case must be sought outside the purview of the TTCA and all other statutes,
which is where the majority finds it.
          The majority opines that the City enjoys no immunity to a negligence action
brought by TxDOT, a statewide agency, for damages for the City’s performance of
an admittedly governmental function—the installation, maintenance, and upkeep of
a waterline—because TxDOT, as a state agency, is the State, whereas the City is a
political subdivision of the State, and therefore enjoys only immunity derived from
the State, which, being derivative, cannot be asserted against the State. The majority
concludes that no waiver of immunity is necessary, or even possible, when a
municipality is sued by the State, since a municipality has no immunity to waive
against the sovereign from which its immunity derives. The majority bases its claim
on the following passage from Posnainsky:
in so far as municipal corporations . . . exercise powers conferred on
them for purposes essentially public—purposes pertaining to the
administration of general laws made to enforce the general policy of the
state—they should be deemed agencies of the state, and not subject to
be sued for any act or omission occurring while in the exercise of such
power, unless, by statute, the action be given; that, in reference to such
matters, they should stand as does sovereignty, whose agents they are,
subject to be sued only when the state, by statute, declares they may be.
 
Posnainsky, 62 Tex. at 127.
          In my view, the majority misconstrues the critical language in the passage from
Posnainsky on which it relies, which states that insofar as municipalities exercise
governmental powers, “they should be deemed agencies of the state, and not subject
to be sued for any act or omission occurring while in the exercise of such power,
unless, by statute, the action be given.” Id. (emphasis added). The majority leaps
from Posnainsky’s statement that a municipality is an agent of the state to the
conclusion that a municipality’s immunity is therefore derivative and, merely because
it is derivative, may not be asserted against the sovereign from which it derives. It
distinguishes the immunity of a State agency, such as TxDOT, from that of a deemed
State agency, such as the City, declaring the former’s immunity to be “sovereign,”
hence not derivative, while the latter’s is derivative, thus not sovereign, so that a true
State agency is not subject to suit by the State, but a deemed State agency is. I can
find no basis for this construction of Posnainsky.
          I interpret the plain language of Posnainsky as stating that a municipality has
immunity to liability and suit in its performance of governmental functions by virtue
of the fact that those functions are conferred on the municipality by the sovereign, so
that the municipality is deemed an agent of the State in performing those functions
and, as such, does indeed share derivatively in that sovereign’s immunity, unless the
Legislature, by statute, declares that the municipality may be sued. I see no logical
way to infer from this language that immunity derived from the State does not exist
to be asserted against the State from which it derives and therefore need not be
waived by statute. Thus, contrary to the majority, I read Posnainsky as holding that
a municipality has sovereign immunity with respect to its exercise of governmental
functions precisely because those functions are conferred on it by the State; thus it
shares derivatively in the State’s sovereign immunity when exercising governmental
functions; and, having sovereign immunity,


 like the State itself, it cannot be sued by
anyone, including another governmental entity of any type, without legislative
permission.
          A long line of well-established authority supports this interpretation of
Posnainsky by holding that any governmental entity, including a municipality, enjoys
immunity to suit for its governmental actions unless that immunity is expressly
waived by the Legislature. See Harris County v. Sykes, 136 S.W.3d 635, 638 (Tex.
2004) (“Sovereign immunity from suit defeats a trial court’s subject matter
jurisdiction unless the state expressly consents to suit. . . . Governmental immunity
operates like sovereign immunity to afford similar protection to subdivisions of the
State, including counties, cities, and school districts.”) (citation omitted); Texas
Natural Res. Conservation Comm’n v. IT-Davy, 74 S.W.3d 849, 853 (Tex. 2002) (“If
the legislature has not expressly waived immunity from suit, the State retains such
immunity even if its liability is not disputed.”); Texas Dep’t of Transp. v. Jones, 8
S.W.3d 636, 638 (Tex. 1999)(“The party suing [a] governmental entity must establish
the state’s consent, which may be alleged either by reference to a statute or to express
legislative permission.” ). It follows from this general principle that “the State is not
liable for the negligence of its employees absent constitutional or statutory provisions
for liability.” University of Tex. Med. Branch at Galveston v. York, 871 S.W.2d 175,
177 (Tex. 1994). Thus, a municipality, enjoying immunity to suit derived from the
State, is not liable for its employees’ performance of governmental functions absent
constitutional or statutory provisions permitting the municipality to be sued—whether
by the State or by anyone else. See Sykes, 136 S.W.3d at 640 (county immune from
negligence action brought by former jail inmate’s wife); Catalina Dev., 121 S.W.3d
at 705 (“[A] governmental unit waives immunity from suit only through its express
consent.”). The majority opinion preempts this entire line of authority.
          The Home-Rule Amendment
          The same reasoning dictates the majority’s response to the City’s argument that
its immunity is not derivative of the State’s immunity, but derives from the home-rule
amendment to the Texas Constitution and can, therefore, be asserted against the State. 
The majority opines that the amendment does not make municipalities their own
sovereigns for purposes of immunity, stating, “The opposite is true. Like all
municipalities, home-rule municipalities still ‘represent no sovereignty distinct from
the State and possess only such powers and privileges as have been expressly or
impliedly conferred upon them.’” Lake Charles Harbor & Terminal Dist. v. Bd. of
Trustees of Galveston Wharves, 62 S.W.3d 237, 246 (Tex. App.—Houston [14th
Dist.] 2001, pet. denied). Since the home-rule amendment does not confer immunity,
the majority concludes, a home-rule municipality has no immunity to damage suits
by the State by virtue of that amendment. I agree with the majority in part and
disagree in part.
          The home-rule amendment gives cities with more than 5,000 inhabitants, like
Galveston, the right to adopt or amend their charters by majority vote at elections held
for that purpose. Tex. Const. art. XI, § 5. As the majority states, the amendment
eliminated the practice of having the legislature grant and amend special charters and,
instead, allowed qualifying municipalities to adopt and to amend their charters
without legislative approval, so long as a charter did not infringe upon the state
Constitution or laws passed by the Legislature. See id.; Tex. Loc. Gov’t Code Ann.
§ 51.072 (Vernon 1999); City of San Antonio v. Boerne, 111 S.W.3d 22, 26 & 26 n.5
(Tex. 2003); Anderson v. Brandon, 47 S.W.2d 261, 262 (Tex. 1932). Because of this
amendment, municipalities adopting a home-rule charter, like Galveston, have “the
full power of self government and look to the Legislature only for limitations on their
power.” Perry v. Grenias, 95 S.W.3d 683, 694 (Tex. App.—Houston [1st Dist.]
2002, pet. denied); accord City of Galveston v. Giles, 902 S.W.2d 167, 170 (Tex.
App.—Houston [1st Dist.] 1995, no writ) (“Under Article 11, §5. . ., the City’s
powers are plenary, subject only to the limitations of the City’s own charter,
ordinances, and superior statutes.”).
          I agree with the majority that the home-rule amendment “‘effectively created 
home rule cities as ‘mini-legislatures’” and authorized them “to do anything [that] the
legislature could theretofore have authorized them to do.” See City of San Antonio,
111 S.W.3d at 26 n.5; Forwood v. City of Taylor, 214 S.W.2d 282, 286 (Tex. 1948)
(describing home-rule municipality as “a delegate of legislative power”). I also agree
with the majority’s conclusion that, “In this sense home-rule cities derive their powers
from the Texas Constitution.” The home-rule amendment thus confers governmental
power—the power to legislate—on certain municipalities through constitutional
enactment.
          Because the home-rule amendment confers the power to legislate on home-rule
municipalities, those municipalities enjoy derivative governmental immunity from
suit in the exercise of that power. But it does not follow that, because a home-rule
municipality enjoys conferred legislative power to amend its charter, hence enjoys
derivative immunity, it has no immunity to a suit for damages by the State for its
negligence in exercising in exercising that legislative power. Under the home-rule
amendment, as before, a municipality’s governmental immunity derives from the
State’s conferring upon it governmental powers and, with them, sovereign immunity;
and, as before, the principle that the sovereign cannot be sued without its own
consent, i.e., without legislative waiver, still applies. 
          Eagle Pass and Policy Consequences
          The majority relies principally for support for its reasoning and conclusion on
Texas Workers’ Compensation Commission v. City of Eagle Pass/Texas Municipal
League Workers’ Compensation Joint Insurance Fund, 14 S.W.3d 801 (Tex.
App.—Austin 2000, pet. denied). I believe this reliance is misplaced. In Eagle Pass,
the plaintiff, TWCC, a statewide agency like TxDOT, assessed administrative
penalties against the City of Eagle Pass and its transportation authority (“Capital
Metro”) for their having made late benefits payments in violation of the Labor Code.
See id. at 803 (citing Tex. Lab. Code Ann. § 409.023(Vernon 1996)). The City and
Capital Metro admitted the violations, but claimed they were immune from
administrative penalties under the sovereign immunity doctrine. See id. The court
recognized the statutory authority of the TWCC to review and audit the records of
insurance carriers to determine whether they were in compliance with the Workers’
Compensation Act. Id. at 802 (citing Tex. Lab. Code Ann. § 414.001-.007(Vernon
1996) and 28 Tex. Admin. Code §§ 180.1-.8 (Vernon 1999)). It also pointed out that
the definition of “insurance carrier” in the statute included self-insuring political
subdivisions and that the City and Capital Metro were undisputedly self-insuring
“political subdivisions.” Id. at 803 (citing Tex. Lab. Code Ann. § 401.011(27)(c)
(Vernon Supp. 2004)). Thus they were in the class of entities subject to the statute.
          The court of appeals could have decided Eagle Pass on purely statutory
grounds, and it could have reached the same conclusion it did, namely that the City
and Capital Metro enjoyed no immunity to administrative penalties assessed by
legislative permission under the Labor Code. Had the court done so, its ruling would
have been consistent with the long line of Supreme Court cases holding that any party
which sues a governmental entity must establish legislative consent to suit. Instead,
like the majority in this case, the Eagle Pass court reasoned that immunity from suit
was “inapplicable” to the State’s assessment of administrative penalties against the
municipal entities. Id. In its view, “[m]unicipalities are created as political
subdivisions of the State” and “represent no sovereignty distinct from the state and
possess only such powers and privileges as have been expressly or impliedly
conferred upon them”; thus, “[b]ecause political subdivisions of the State do not
possess such independent sovereignty, they have no immunity as against the State.”
Id. at 803-04. 
          In my view, the court of appeals’ rationale in Eagle Pass is unnecessary to its
disposition of the case, conflicts with well-established law, and is erroneous; but the
majority’s opinion in this case, which adopts that reasoning, goes well beyond Eagle
Pass. First, there is no statutory authority to support the majority’s decision that
Galveston lacks immunity to TxDOT’s tort claims, unlike the statutory authority
provided by the Labor Code in Eagle Pass. Second, the majority’s holding
contravenes the plain language of the applicable statute, the TTCA, whereas, in Eagle
Pass, the Legislature had expressly conferred on the TWCC, by statute, the authority
to levy administrative penalties on self-insured municipalities like Eagle Pass. Thus,
the majority here confers on a state agency by judicial fiat the power to sue another
governmental entity for damages for acts for which that governmental unit would
otherwise be immune from suit, and it does so without any reliance on legislative
authority, with potentially far-reaching consequences.
           As the majority acknowledges, sovereign immunity protects the public treasury
by preventing the shifting of tax resources away from their intended purposes and
towards defending lawsuits and paying judgments. See Wichita Falls State Hosp. v.
Taylor, 106 S.W.3d 692, 695 (Tex. 2003); IT-Davy, 74 S.W.3d at 854. The majority
also acknowledges that allowing the State (or a state agency) to recover damages
from a municipality shifts funds from the local to the state level, depleting local
coffers of funds that have likely already been budgeted for local matters. However,
it rationalizes its decision to permit such shifting of funds from one taxing authority



to another on the ground that the loss to one governmental entity and taxing authority,
the municipality, replenishes other public funds—those allocated in the state budget
for projects of the State and its agencies—that were lost due to the municipality’s
fault.
          The majority fails to recognize that the inevitable consequence of its decision
to permit a state agency to sue a municipality for damages for negligence in the
performance of governmental functions is the shifting of public funds from one
sovereign taxing authority to another by judicial decree, without any authorization
for such shifting of sovereign powers by the Texas Legislature or by the people of the
municipal taxing unit. There is no authority for such a judicial assertion of taxing
authority in the Texas Constitution or laws, and the majority cites to none. It merely 
falls back upon its assertion that since a municipality’s immunity to suit for damages
derives from the State it cannot be asserted against the State.
          As this Court itself has observed, “Like the power of taxation, the power to
manage fiscal affairs ‘is an essential and inherent attribute of sovereignty belonging
as a matter of right to every independent government.’” Perry, 95 S.W.3d at 694
(quoting City of San Angelo v. Deutsch, 126 Tex. 532, 91 S.W.2d 308, 309 (Tex.
1936)).


 Nor does it matter whether a political subdivision of the State enjoys the
power to manage its fiscal affairs by legislative act or by constitutional directive; a
municipality that has such power is exercising “an essential and inherent attribute of
sovereignty” enjoined upon it as a governmental function by constitutional or
legislative decree; and it is, therefore, immune to private or State suits for damages
that interfere with that power, in the absence of an express legislative directive
otherwise. 
          A governmental entity’s power to manage its fiscal affairs may not be
readjusted by judicial action. Rather, as the Texas Supreme Court has recently
stated, “We have consistently deferred to the Legislature to waive sovereign
immunity from suit, because this allows the Legislature to protect its policymaking
function. . . . Indeed, in the Code Construction Act, the Legislature expressed its
desire to maintain control over sovereign immunity ‘[i]n order to preserve [its]
interest in managing state fiscal matters through the appropriations process.’” IT-Davy, 74 S.W.3d at 854 (citing Tex. Gov’t Code § 311.034). The Court explained,
Subjecting the government to liability may hamper governmental functions by
shifting tax resources away from their intended purposes toward defending
lawsuits and paying judgments. Accordingly, the Legislature is better suited
than the courts to weigh the conflicting public policies associated with waiving
immunity and exposing the government to increased liability, the burden of
which the general public must ultimately bear.
 
Id. A court’s subjection of any of the entities that form the government of the State
to liability in the exercise of their governmental functions usurps a vital function of
the Legislature.
          The majority reasons, however, that the people acting through the branches,
agencies, and departments of state government (but not municipalities) are sovereign;
the Attorney General in representing TxDOT, a state agency, in this case represents
the people; therefore, TxDOT, as represented by the Attorney General, is not usurping
legislative power by bringing this suit, but is acting in the name of the people to
replenish public coffers depleted through the fault of the City; nor, by extension, is
this Court usurping power by entertaining this suit. This reasoning and this
conclusion, however, misapprehend the guiding principle of representative
government, namely that government may be said to be government “of the people,
by the people, and for the people” only because, at all levels of government,
representatives of the people exercise the powers conferred upon them by the people. 
It is a misstatement of this principle to assert that state agencies and the executive
officials who represent them represent the people, but municipalities and their
representatives do not. 
          This line of reasoning also violates not only the reasoning and the rule in IT-Davy, but also the constitutional separation of powers doctrine. That doctrine
mandates that “no person, or collection of persons, being one of these departments,
shall exercise any power properly attached to either of the others, except in the
instances herein expressly permitted.” Tex. Const. art. II, § 1; see also Empire Gas
& Fuel Co. v. State, 121 Tex. 138, 47 S.W.2d 265, 274 (Tex. 1932) (“The sovereign
power of our government rests with the people. The Constitution . . . represents the
expression of the will of the people and in the light of the history of governments, its
adoption is for the purpose of preserving certain rights and prescribing certain powers
under which the Legislature, the executive and the judiciary perform their functions”). 
It is a contravention of the doctrine of separation of powers for a state agency or
official of the executive branch—rather than the Legislature—to assert the authority
to determine which entities may be sued by the State and which cannot; and it is a
further contravention of that doctrine for a court to assert the authority to determine
the sovereign immunity of branches of government without reference to any
constitutional provision or statutory authority and for it to permit one governmental
entity endowed with immunity to sue another entity so endowed without express
legislative consent.
          The effects of the majority’s opinion are not limited to judicial and executive
infringement on the Legislature’s power to make fiscal policy. As amicus the Texas
Association of School Boards Legal Assistance Fund points out, the Texas Supreme
Court has rejected a number of arguments seeking to prove a waiver of sovereign
immunity through actions other than legislative acts. See IT-Davy, 74 S.W.3d at 858
(refusing to find contractual waiver of Texas Natural Resource Conservation
Commission’s immunity from suit); General Servs. Comm’n v. Little-Tex Insulation
Co., 39 S.W.3d 591, 594 (Tex. 2001) (refusing to find State’s waiver of immunity
from suit simply by contracting with private party). In IT-Davy, the Supreme Court
not only refused to find that a waiver of the TNRCC’s immunity by contract; it also
refused to find a legislative waiver of immunity in provisions of the Texas Water
Code permitting a person affected by an act or omission of the TNRCC to seek
judicial review. It stated,
The Code Construction Act provides that “a statute shall not be construed as
a waiver of sovereign immunity unless the waiver is effected by clear and
unambiguous language.” Tex. Gov’t Code § 311.034. And, the Legislature
knows how to clearly and unambiguously waive sovereign immunity from suit. 
For instance, the Texas Tort Claims Act provides that “[s]overeign immunity
to suit is waived and abolished to the extent of liability created by this
chapter.” Tex. Civ. Prac. & Rem. Code §101.025(a).
 
IT-Davy, 74 S.W.3d at 859. (Significantly, the TTCA does not provide for a wavier
of sovereign immunity for the acts upon which TxDOT has sued the City.) As Amici
assert, if sovereign immunity is not waived by any of the cited actions, but is waived
by the Attorney General acting without any statutory authority in this case (or if
waiver need not even be considered because the City enjoys no immunity against
TxDOT, its sovereign), an entire body of law governing sovereign immunity and its
waiver is rendered meaningless. The majority avoids this conclusion by reiterating
that a statute cannot waive immunity a municipality never had, i.e., immunity to the
State’s suits against it.
          Nor does the majority come to grips with the City’s very serious argument that
no principled distinction can be made among political subdivisions of the State
deemed to share in the sovereign immunity of the State and those deemed to have
only “derivative” immunity, hence to have no immunity at all to suits for damages
brought against them by the more privileged “sovereign” entities. The majority’s
attempt to define its terms, distinguish relevant cases and apposite rules of law, and
limit its holding signals just how troubled its opinion is.
          The majority claims to have solved the problem of distinguishing those
governmental entities considered to be the State, hence to have sovereign immunity
to suits for damages by the State, from those governmental entities considered to have
only derivative governmental immunity, hence to be subject to suits for damages by
the State, by borrowing the general distinction between State entities and political
subdivisions set out in Monsanto Company v. Cornerstones Municipal Utility
District, 865 S.W.2d 937, 940 (Tex. 1993) and Guaranty Petroleum Corporation v.
Armstrong, 609 S.W.2d 529, 531 (Tex. 1980). According to this definition, as
recapped by the majority, ‘State’ entities “have statewide jurisdiction, have a
governing person or body that is elected in statewide elections or is appointed by a
state official, and lack the power to assess or collect taxes.” By necessary
implication, governmental entities that fail to satisfy these criteria lack immunity to
damage suits against them by the State. But piggybacking the majority’s distinction
between governmental entities subject to suits for damages by the State and
governmental entities immune from such suits on the general distinction drawn in
Monsanto and Guaranty Petroleum between political subdivisions and the State
entails absurdities. 
          By expressly excluding all entities that have the power to assess or collect taxes
from the definition of state entities entitled to sovereign immunity against the State,
the majority excludes the Legislature from the definition of the State and subjects it
to suits for damages by executive agencies. Moreover, as it acknowledges, the
majority opens the coffers of all other ‘non-State’ governmental taxing authorities to
the State’s raids on their treasuries. And its criteria for determining which
governmental entities may be sued by other governmental entities have political
consequences, decreeing, for example, that political subdivisions, like school
districts, may be sued for damages by State agencies, but State entities, such as
universities, may not be. See Taylor, 106 S.W.3d at 694 n.3 (characterizing
“counties, cities, and school districts” as political subdivisions and “agencies, boards,
hospitals, and universities” as “divisions of state government”). Finally, the
majority’s definition of the State, combined with its holding that the State is exempt
from abiding by the Texas Tort Claims Act, rewrites the Act. Henceforth, the TTCA
governs a political subdivision’s immunity from claims for damages in the exercise
of its governmental functions except when the subdivision is being sued by the State. 
An exemption the Legislature did not write thus governs the outcome of this case and
many more to come.
          I fear the majority is opening a Pandora’s box of future litigation over which
governmental entities enjoy the sovereign immunity of the State, and are thus entitled
to sue other governmental entities, and which governmental entities have merely
derivative immunity and are subject to such suits, with immense potential damage to
the foundational principles of representative government and the separation of
powers. More immediately, I fear the majority is opening municipal coffers to
potential plunder by state agencies, with no permission from the Legislature for this
rearrangement of the State’s own carefully crafted laws. 
          I do not intend to imply, nor do I believe, that the State, acting through the
Legislature by statute or resolution, lacks the power to authorize suits for damages
by governmental entities against other governmental entities that negligently perform
governmental functions for which they would otherwise enjoy immunity to suit. 
However, action authorizing such litigation should be taken deliberately, by the
Legislature, not by an executive agency or official utilizing the court system to obtain
judicially that which the Legislature has not expressly authorized; nor should a court
endorse such litigation. 
          For the foregoing reasons, I cannot agree with the majority opinion, and I
respectfully dissent. I would affirm the judgment of the trial court.
 
 
 
                                                                        Evelyn V. Keyes
                                                                        Justice
Panel consists of Justices Taft, Keyes, and Bland.
Justice Keyes, dissenting.
En banc consideration was requested. See Tex. R. App. P. 41.2(c).
A majority of Justices voted against en banc consideration. See id.
Justice Jennings, dissenting from the denial of en banc consideration.